**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-4248

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GERALD ALEX BOUTCHER,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:19−cr−00176−LMB−2)

Argued: March 12, 2021                                Decided: May 26, 2021

Before NIEMEYER, KEENAN, and HARRIS, Circuit Judges.

Dismissed by published opinion. Judge Keenan wrote the opinion, in which Judge Niemeyer and Judge Harris joined.

**ARGUED:** Erin McCampbell Paris, LIPSITZ GREEN SCIME CAMBRIA LLP, Buffalo, New York, for Appellant. Daniel Taylor Young, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Barry N. Covert, LIPSITZ GREEN SCIME CAMBRIA LLP, Buffalo, New York; Brian Denton West, THE WEST LAW GROUP, P.C., McLean, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Jamar K. Walker, Assistant United States Attorney, Kimberly R. Pedersen, Assistant United States Attorney, Aidan Taft Grano, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, the defendant challenges the district court's orders of restitution and forfeiture, which were imposed based on his involvement in a scheme of unlawful "short sales"[1] of three residential properties in Virginia. Pursuant to a plea agreement, Gerald Boutcher pleaded guilty to conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. The district court sentenced Boutcher to a three-year term of probation, and entered orders of restitution and forfeiture, each in the amount of $227,512.07.[2] Boutcher challenges his sentence only with respect to these orders of restitution and forfeiture.[3] Upon our review, we do not reach the merits of Boutcher's arguments, because they are barred by the appeal waivers in his plea agreement. We therefore grant the government's motion to dismiss Boutcher's appeal.

---

[1] "Short sales" allow a homeowner who cannot satisfy her mortgage obligation to discharge that obligation by selling the property for less than what is owed. *See United States v. Stone*, 866 F.3d 219, 222 (4th Cir. 2017).

[2] We observe that there appear to be two clerical errors in the judgment. First, the judgment order lists as the basis for the charge of "conspiracy to commit bank fraud" 18 U.S.C. § 1343, which statute prohibits the commission of wire fraud. The statutes cited in the indictment are 18 U.S.C. § 1344, prohibiting the commission of bank fraud, and 18 U.S.C. § 1349. Section 1349, which is also listed in the plea agreement, prohibits conspiracy or attempt to commit the offenses prohibited in 18 U.S.C. §§ 1341-1351, and thus sets forth the proper statutory basis for the charge of conspiracy to commit bank fraud. Second, the judgment order contains an error in the name of the restitution statute, as explained further below.

[3] Orders of restitution and forfeiture in a criminal case constitute part of the defendant's sentence. *See United States v. McLeod*, 972 F.3d 637, 640 (4th Cir. 2020) (restitution); *United States v. Martin*, 662 F.3d 301, 306 (4th Cir. 2011) (forfeiture).

I.

Over the course of a few years, Boutcher and his co-conspirator, Alkesh Tayal, worked together to defraud several banks and financial institutions with respect to "short sales" and refinancing transactions for three residential properties. Generally, the scheme involved the following conduct. Initially, Boutcher posed as a buyer in one fraudulent short sale of a property in which Tayal had a financial interest. Tayal intended to retain ownership of the property and, ultimately, to reduce his mortgage payment on that property. Also, the two men engaged in fraudulent short sales of other properties to sell or "flip" the properties at higher prices to gain a profit. In violation of the financial agreements that both men signed with various institutions, Boutcher and Tayal did not disclose their commercial relationship with each other. They also solicited others to pose as representative realtors on the fraudulent transactions, creating the appearance that the transactions were conducted at "arms-length."

A federal grand jury returned a multiple-count indictment against Boutcher and Tayal. Boutcher was charged with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count 1), and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 2, 1956(h) (Count 5). The indictment included a forfeiture notice, in conformance with the provisions of 18 U.S.C. § 982(a) and Federal Rule of Criminal Procedure 32.2(a). After Boutcher agreed to plead guilty to Count 1 of the indictment, the government voluntarily dismissed Count 5.

In his plea agreement, Boutcher agreed to waive "the right to appeal the conviction and any sentence within the statutory maximum . . . on the grounds set forth in 18 U.S.C.

3

§ 3742 or on any ground whatsoever other than an ineffective assistance of counsel claim that is cognizable on direct appeal" (the global appeal waiver). Section 3742 specifies four typically permissible grounds for a defendant to appeal a district court's sentence: (1) legal error; (2) misapplication of sentencing guidelines; (3) imposition of a sentence greater than the applicable guidelines range; and (4) imposition of a "plainly unreasonable" sentence for which there is no sentencing guideline. 18 U.S.C. § 3742(a).

The plea agreement also provided that "restitution is mandatory pursuant to 18 U.S.C. § 3663A," the Mandatory Victims Restitution Act (the Restitution Act). Notably, the Restitution Act mandates that a sentencing court order restitution in the full amount of the victims' losses. 18 U.S.C. § 3663A; *United States v. Leftwich*, 628 F.3d 665, 668 (4th Cir. 2010). With respect to the amount of restitution, the plea agreement stated that Boutcher owed "at least $7,500," but that the court ultimately would determine the appropriate amount.

Additionally, in the plea agreement, Boutcher agreed "to forfeit all interests in any fraud-related asset that [he] own[ed] or over which he exercise[d] control, directly or indirectly." Boutcher also agreed that the "conduct described in the charging instrument and Statement of Facts provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government." And finally, Boutcher agreed "to waive all constitutional and statutory challenges to forfeiture in any manner[,] including direct appeal[,] to any forfeiture carried out in accordance with this [agreement] on any grounds, including that the forfeiture constitutes an excessive fine or punishment" (the forfeiture appeal waiver).

4

At a hearing conducted under Federal Rule of Criminal Procedure 11, Boutcher stated that he had a college degree and was not presently under the influence of drugs or alcohol. Boutcher also acknowledged that he had read the terms of the plea agreement, discussed those terms with his attorney, and understood them. After the district court discussed with Boutcher the terms of the plea agreement's global appeal waiver and forfeiture appeal waiver, Boutcher stated that he understood those terms. He also confirmed his understanding that the court could impose a restitution amount higher than the $7,500 amount referenced in the plea agreement, and that he likewise was subject to the imposition of an order of forfeiture. The district court accepted Boutcher's guilty plea under the above-stated terms.

The government later proposed a preliminary order of forfeiture against Boutcher in the amount of $227,512.07. In submitting this proposed figure, the government relied on an analysis prepared and submitted to the court by Rachel Bingham, a forensic accountant. Bingham concluded that $227,512.07 represented the profit that Boutcher and Tayal had derived from their fraudulent scheme. Despite Boutcher's claim that he had received only $7,500 of the profits, the government asserted that Boutcher should be subject to forfeiture of the full amount of the scheme's profits, including all the funds that had been deposited into a business bank account over which both men had "signatory authority."[4]

---

[4] "Signatory authority" gives an individual a "[l]icense to make a decision, [especially] to withdraw money from an account or to transfer a negotiable instrument." *Signatory Authority*, Black's Law Dictionary (11th ed. 2019).

With respect to restitution, the probation officer proposed in the presentence report that restitution be set at $1,012,000, to compensate the five financial institutions identified as victims of the scheme. The government advocated for this amount of restitution based on Bingham's analysis. Depending on the particular transaction at issue, Bingham calculated the losses incurred by the various financial institutions based on either (1) the difference between the fraudulent short sale prices for the residential properties and the later refinancing amount obtained, or (2) the difference between the fraudulent short sale price and the sales price reached with a third party. Boutcher objected to Bingham's methodology and to the proposed amount of restitution, contending that only one financial institution suffered a loss totaling $3,182.27 in unpaid interest.

The district court initially stated at the sentencing hearing that it intended to set restitution at $7,500 based on the money Boutcher individually received from the scheme. However, the government maintained that if the court rejected the restitution amount of $1,012,000, the court should set restitution at the same amount as the forfeiture figure, $227,512.07, because this amount reflected the money within Boutcher's control.[5] In accord with the government's argument, the district court ordered both restitution and forfeiture in the amount of $227,512.07. Additionally, the court imposed a three-year term of supervised probation.

In its final judgment, the court assessed $227,512.07 in restitution "pursuant to the Victim and Witness Restitution Act," an apparent misnomer that does not identify the name

_____

[5] Later in the hearing, the government confirmed with the court that restitution should only reflect the loss to a victim rather than the gains from the scheme.

6

of any statute addressing restitution. However, the restitution order entered the same day stated that "pursuant to 18 U.S.C. § 3663A(a)(1) [the Restitution Act] the defendant is ordered to pay restitution in the amount of $227,512.07." And, in accord with the government's motion and the court's entry of a preliminary order of forfeiture, the final judgment directed forfeiture in the amount of $227,512.07, pursuant to 18 U.S.C. § 982(a) and Rule 32.2(b). Boutcher appeals from the district court's judgment.

## II.

## A.

Boutcher argues on appeal that the district court made several errors in imposing the orders of restitution and forfeiture. As explained in more detail below, Boutcher contends that the court's errors rendered its orders on restitution and forfeiture "illegal," an argument that Boutcher contends is outside the scope of both the global appeal waiver and the forfeiture waiver. In response, the government asks us to dismiss Boutcher's appeal, contending that his arguments are barred by the terms of both waiver provisions.

We review an appellate waiver de novo to determine whether the waiver is enforceable. *United States v. McLeod*, 972 F.3d 637, 640 (4th Cir. 2020); *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016). "When the government seeks to enforce an appeal waiver and has not breached the plea agreement, we will enforce the waiver if it is valid and if the issue being appealed falls within" the scope of the waiver. *United States v. Beck*, 957 F.3d 440, 445 (4th Cir. 2020).

A "valid" appeal waiver is one entered by the defendant knowingly and intelligently, a determination that we make by considering the totality of the circumstances. *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012). When a district court questions a defendant during a Rule 11 hearing regarding an appeal waiver and the record shows that the defendant understood the import of his concessions, we generally will hold that the waiver is valid. *United States v. McCoy*, 895 F.3d 358, 362 (4th Cir. 2018).

In the present case, Boutcher does not dispute the validity of either the global appeal waiver or the forfeiture appeal waiver. Our review of the record, including the language of the waivers, the court's colloquy with Boutcher, and Boutcher's statements to the court demonstrating his understanding of the rights he agreed to waive, confirms that Boutcher executed the waivers knowingly and intelligently. Thus, we conclude that the waiver provisions in the plea agreement are valid.

We therefore turn to consider whether Boutcher's arguments on appeal fall within the scope of those waiver provisions. When we interpret plea agreements, we apply principles of "contract law to ensure that each party receives the benefit of the bargain," and look to the plain language of the agreement, construing it in the "ordinary sense." *United States v. Davis*, 714 F.3d 809, 814 (4th Cir. 2013) (citation omitted).

Because plea agreements necessarily implicate a defendant's constitutional rights, we analyze those agreements with a greater degree of scrutiny than we would evaluate a contract in a civil context. *Id.* In conducting our review, we hold the government, which has a greater negotiating position, to a higher standard for any imprecise language or ambiguity that appears in plea agreements. *See id.* at 814-15. Nonetheless, courts cannot

8

rewrite agreements or construe ambiguities when none exist. *United States v. Under Seal*, 902 F.3d 412, 418 (4th Cir. 2018). "If the plea agreement is unambiguous as a matter of law, and there is no evidence of governmental overreaching, we should interpret and enforce the agreement accordingly." *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007).

These general principles inform our analysis in the present case. We also are mindful of the fact that Boutcher obtained the benefit of the government's voluntary dismissal of the conspiracy to commit money laundering charge, in exchange for his numerous concessions outlined above. We therefore turn to consider whether the waivers contained in the plea agreement bar Boutcher's arguments challenging the restitution and forfeiture orders.

## B.

With respect to restitution, Boutcher argues that the district court committed reversible error: (1) in failing to identify the statutory basis for restitution in its judgment order; and (2) in failing to calculate the victims' losses under the required standard.[6] Despite the broad language in the global appeal waiver, in which Boutcher agreed to waive his appeal of his sentence "on any ground," Boutcher contends that the court's errors were acts exceeding the court's authority, rendering the restitution order "illegal" and outside the scope of the global appeal waiver. We disagree with Boutcher's position.

---

[6] To the extent Boutcher contends that the district court failed to make necessary factual findings to explain its decision to impose restitution in the amount of $227,512.07, we reject that argument as barred by the global appeal waiver.

Initially, we reject Boutcher's contention that our decision in *United States v. Broughton-Jones*, 71 F.3d 1143 (4th Cir. 1995), compels a conclusion that the district court's failure to cite the Restitution Act in the judgment order left the court without authority to impose restitution. In *Broughton-Jones*, we refused to enforce an appeal waiver when the defendant challenged a restitution order imposed under the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, on the ground that the VWPA did not permit restitution for her offense of conviction. 71 F.3d at 1147-49. We agreed, explaining that a restitution order imposed without statutory authority is akin to an "illegal . . . sentence of imprisonment that exceeds the statutory maximum." *Id*. at 1147 (internal quotation marks omitted); *see also Thornsbury*, 670 F.3d at 539. We explained that a defendant's challenge to an illegal term of imprisonment lies outside the scope of an otherwise valid appeal waiver. *Broughton-Jones*, 71 F.3d at 1147. Accordingly, we held that the defendant's challenge to an unauthorized restitution order was not barred by her appeal waiver. *Id.* at 1147-49.

Here, however, Boutcher does not dispute that he was subject to mandatory restitution under the Restitution Act. Indeed, his plea agreement makes clear that the Restitution Act provided the statutory basis for restitution in this case. Moreover, during his plea colloquy, Boutcher confirmed that he understood and consented to the terms of his plea agreement, including the requirement of mandatory restitution under the Restitution Act.

Consistent with the plain language of Boutcher's plea agreement, the district court's restitution order, which was entered on the same day as the final judgment order, stated

10

that restitution was ordered "pursuant to" the Restitution Act. The restitution order further stated that under "18 U.S.C. § 3663A(a)(1) [the Restitution Act,] the defendant is ordered to pay restitution in the amount of $227,512.07." Accordingly, the court's clerical error in the final judgment order did not affect the court's authority to impose the terms of restitution set forth in the restitution order, which cited the proper statutory source of the court's authority. We therefore conclude that Boutcher's challenge to the restitution order based on clerical error is barred by the plain language of the global appeal waiver.

Boutcher argues, nevertheless, that the district court exceeded its authority in fixing restitution at $227,512.07 on the basis of Boutcher's purported profit, instead of calculating the victims' losses as required under the Restitution Act.[7] Any order of restitution made under the Restitution Act must be issued in accordance with 18 U.S.C. § 3664, which establishes procedures for calculating restitution amounts. *United States v. Harvey*, 532 F.3d 326, 339 (4th Cir. 2008). Once a district court concludes that restitution is appropriate, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A).

A defendant's economic gain from his criminal activity generally is an inappropriate basis on which to calculate the victims' losses for purposes of restitution. *Harvey*, 532

---

[7] To the extent Boutcher challenges the restitution order by arguing that only one of the victims suffered loss based on Boutcher's conduct, in the amount of $3,182.27, that argument plainly is barred by the global appeal waiver because it does not call into question the legality of the restitution order. *See United States v. Cohen*, 459 F.3d 490, 497-500 (4th Cir. 2006).

F.3d at 340-41 (citing *United States v. Galloway*, 509 F.3d 1246 (10th Cir. 2007)). Indeed, in *Harvey*, we concluded that the district court "abused its discretion" by calculating restitution using this inappropriate standard. *Id.* at 341. Notably, however, we did not hold that the court exceeded its authority in ordering restitution on this basis, but merely discussed the error in terms of the court's exercise of its discretion. *Id.*

Here, even if we assume that the district court erroneously fixed restitution based on the amount Boutcher profited from the scheme, such error did not impact the court's authority to order restitution under the Restitution Act. *Cf. Beck*, 957 F.3d at 444-45 (holding that a defendant's argument challenging the statutory basis for his conviction, on the ground that the statute did not define a criminal offense, called into question the court's authority to convict and fell outside the scope of the appeal waiver). Instead, any such mistake was merely a legal error involving the methodology employed by the court. *See Cohen*, 459 F.3d at 497-500 (holding that because the district court's restitution award was within the scope of the court's authority under the Restitution Act, the defendant's challenge to the *amount* of restitution ordered fell within the scope of his appeal waiver).

We also observe that the probation officer recommended, and the government urged based on Bingham's analysis, that the court impose more than $1 million in restitution based on the total losses incurred by the victims. Although Boutcher disputed that loss amount and method of calculation, the district court, on this record, could have imposed

12

that much higher amount of restitution.[8] Thus, by rejecting the $1 million figure and imposing a restitution amount of $227,512.07, the district court may have erred in its calculation, but did not issue an "illegal" order exceeding its authority under the Restitution Act. *See Thornsbury*, 670 F.3d at 539 (explaining that a court can commit "legal error" in imposing sentence, which does not necessarily render the sentence "illegal" in the context of applying an appeal waiver); *Davis*, 714 F.3d at 812 (citing *Cohen*, 459 F.3d at 498) (explaining that courts lack the inherent authority to order restitution, and must rely on a statutory source for such action). Because Boutcher agreed to waive the right to appeal his sentence, which included restitution, "on any ground," we conclude that Boutcher's challenge to the amount of restitution is barred under the terms of his global appeal waiver.

C.

With respect to the forfeiture order, Boutcher asserts that the "district court exceeded its authority" by imposing forfeiture in the amount of $227,512.07, because Tayal received most of those funds placed in their shared business bank account. Boutcher argues that he was subject to forfeiture only for the amount of $7,500 that he personally profited from the conspiracy, not for the proceeds he never received that had been deposited into

---

[8] To the extent Boutcher argues on appeal that two of the named entities do not qualify as financial institutions, this factual argument plainly is encompassed by the global appeal waiver.

the account.[9]  Thus, Boutcher contends that the district court lacked authority to enter the forfeiture order against him for the entire amount of $227,512.07.

We reject Boutcher's attempt to avoid the forfeiture appeal waiver and the other terms of his plea agreement.  Under the plain language of the plea agreement, Boutcher agreed to "forfeit all interests in any fraud-related asset that [he] own[ed] or over which he exercise[d] control, directly or indirectly."  Boutcher also agreed that the statement of facts provided a valid basis for the forfeiture of property sought by the government.  The statement of facts makes clear that Tayal and Boutcher "both had signatory authority for" and thus, "control" of, all the funds in their shared business bank account.  Boutcher therefore consented that all the assets in the bank account could be included in an order of forfeiture entered against him.[10]

---

[9] Boutcher also argues that the court did not comply with certain procedures in Federal Rule of Criminal Procedure 32.2(b) by failing to conduct a hearing regarding the amount of forfeiture.  We conclude that any such errors do not call into question the court's authority to order forfeiture.  Therefore, we conclude that Boutcher's arguments regarding Rule 32.2 are barred by the forfeiture appeal waiver.

[10] We also note that a recent decision of the First Circuit directly undercuts Boutcher's argument that he did not "control," and thus could not be subject to forfeiture of, the full amount of the proceeds in the shared business bank account to which he and Tayal had access.  *See United States v. Cadden*, 965 F.3d 1, 40 (1st Cir. 2020) (explaining that the rule in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), prohibiting joint and several liability for forfeiture when co-conspirator did not obtain proceeds of crime, is inapplicable when a party jointly controls a bank account, because that party "actually acquire[s]" all the funds in the account); *cf. United States v. Chittenden*, 896 F.3d 633, 636, 639 (4th Cir. 2018) (court is not authorized to order forfeiture under 18 U.S.C. § 982(a)(2) of proceeds that the defendant never acquired but remained solely in the possession of her co-conspirator).

14

Based on these clear concessions that Boutcher made in the plea agreement, we conclude that Boutcher is precluded by his forfeiture appeal waiver from challenging the amount of forfeiture on appeal. As noted above, under the forfeiture appeal waiver, Boutcher agreed to waive "all constitutional and statutory challenges to forfeiture in any manner[,] including direct appeal[,] to any forfeiture carried out in accordance with this [agreement]." Accordingly, the unambiguous terms of the plea agreement, including the language of the forfeiture appeal waiver, bar Boutcher's present challenge to the district court's forfeiture order.

## III.

For these reasons, we grant the government's motion to dismiss Boutcher's appeal, because his arguments are barred by the appeal waiver provisions in his plea agreement.

*DISMISSED*