**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-4604

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GLENDA TAYLOR-SANDERS,

Defendant - Appellant.

No. 21-4136

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GLENDA TAYLOR-SANDERS,

Defendant - Appellant.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:19-cr-00147-RJC-DCK-1)

Argued:  September 22, 2023                    Decided:  December 12, 2023

Before WYNN, QUATTLEBAUM, and HEYTENS, Circuit Judges.

———————

Dismissed by published opinion. Judge Wynn wrote the opinion, in which Judge Quattlebaum and Judge Heytens joined.

———————

**ARGUED:** David Quentin Burgess, DAVID BURGESS LAW, PC, Charlotte, South Carolina, for Appellant. Julia Kay Wood, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

WYNN, Circuit Judge:

When a criminal defendant's valid guilty plea includes a waiver of the right to appeal, this Court generally enforces the waiver by dismissing any subsequent appeal that raises issues within the scope of the waiver. *E.g.*, *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016); *United States v. Cohen*, 459 F.3d 490, 497 (4th Cir. 2006). But we have established narrow exceptions to that rule. For example, even if an appeal waiver is valid and applicable, we will review a claim that a district court's sentence or restitution order exceeded the court's statutory authority. *Cohen*, 459 F.3d at 497–98.

Defendant Glenda Taylor-Sanders challenges several aspects of the sentence and restitution order that the district court entered following her guilty plea. Each of these challenges falls squarely within the scope of Taylor-Sanders's valid appeal waiver, and none qualifies for an exception that would permit our review. Accordingly, we dismiss Taylor-Sanders's appeal in its entirety.

I.

From February 2017 through May 2019, Taylor-Sanders took advantage of her role as a licensed insurance agent to defraud several trucking companies and the insurance finance company BankDirect Capital Finance. She defrauded the trucking companies by misappropriating funds that the companies provided her to pay for their insurance policy premiums. And she defrauded BankDirect Capital Finance by obtaining loans under the guise of nonexistent insurance policies. Instead of using the funds she obtained to pay insurance policy premiums or to pay back BankDirect Capital Finance for the legitimate

3

loans it made to the trucking companies, Taylor-Sanders spent the funds on personal expenditures including cars, football tickets, and mortgage payments.

Predictably, some of the trucking companies' insurance policies lapsed because Taylor-Sanders did not pay the insurance premiums. Her scheme unraveled when one trucking company, DW Express, discovered its insurance policy was canceled for nonpayment after it tried to file a claim for an April 2019 trucking accident. A grand jury indicted Taylor-Sanders the next month on four counts of wire fraud under 18 U.S.C. § 1343 and two counts of aggravated identity theft under 18 U.S.C. § 1028A(a)(1).

On January 22, 2020, with the assistance of counsel, Taylor-Sanders signed a plea agreement, under which she agreed to plead guilty to one count of wire fraud (Count Four). She also agreed to pay "full restitution, regardless of the resulting loss amount, to all victims directly or indirectly harmed by [her] 'relevant conduct,' . . . including conduct pertaining to any dismissed counts or uncharged conduct, regardless of whether such conduct constitutes an 'offense' under 18 U.S.C. §§ 2259, 3663 or 3663A." S.J.A. 635 ¶ 9a.[1] And she "waive[d] all rights to contest the conviction and sentence in any appeal" on any grounds other than ineffective assistance of counsel or prosecutorial misconduct. S.J.A. 636 ¶ 17. In exchange, the Government agreed to dismiss all the remaining counts against her.

On January 24, 2020, Magistrate Judge David C. Keesler conducted a plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. When the magistrate judge

---

[1] Citations to the "J.A." and "S.J.A." refer, respectively, to the Joint Appendix and Sealed Joint Appendix filed by the parties in this appeal.

asked Taylor-Sanders whether she had carefully reviewed the plea agreement with her lawyer, Taylor-Sanders responded, "Not as much as I would like." J.A. 80. The magistrate judge then granted defense counsel's request for a recess to further discuss the plea agreement with Taylor-Sanders.

Following a thirty-minute recess, Taylor-Sanders confirmed that she had an adequate opportunity to review the plea agreement and the corresponding factual basis document with counsel and was ready to proceed. She confirmed that she understood "that the right to appeal [her] conviction and/or [her] sentence has been expressly waived in [her] Plea Agreement." J.A. 82.

However, when the magistrate judge asked Taylor-Sanders if she understood and agreed with the factual basis document, Taylor-Sanders again waivered, claiming that some facts within the document were "incorrect." J.A. 84. The magistrate judge responded that he would end the hearing for the day to allow Taylor-Sanders and her counsel to "have some further conversation about" the plea deal. *Id.* Defense counsel informed the court that Taylor-Sanders had changed her mind again and "wishe[d] to go through with the plea." J.A. 85. But the magistrate judge ended the hearing, stating, "I think the record is now muddied enough that you guys are going to have to talk about it." J.A. 85.

Eighty minutes later, the magistrate judge reconvened the hearing. He explained that, because he had not intended to resume the hearing that day, he wanted to "make an appropriate record about what we're doing and why we're doing it." J.A. 86. Defense counsel announced that she and the Government had submitted a revised factual basis document that addressed Taylor-Sanders's previous concerns. And defense counsel noted

5

that she had reviewed the amended document with Taylor-Sanders, who "intend[ed] to enter her guilty plea [that] afternoon." J.A. 87.

To ensure that the plea was knowing and voluntary, the magistrate judge reconducted much of the Rule 11 colloquy that he had begun earlier. Taylor-Sanders confirmed that she intended to plead guilty, understood that the decision to plead guilty was entirely hers, and had an adequate opportunity to review the plea documents and discuss possible defenses with counsel. She confirmed that she understood and agreed with the plea documents, that no one had threatened, intimidated, or forced her to enter the guilty plea, and that she understood all parts of the proceeding. She also confirmed that she was satisfied with her counsel's services, had no further questions or statements, and still wished to plead guilty.

After this colloquy, the magistrate judge found that Taylor-Sanders's plea was knowing and voluntary and that Taylor-Sanders understood the charges and potential penalties and consequences of her plea. Finally, the magistrate judge found that the plea was supported by an independent factual basis. As such, he accepted the plea and recommended that the district court enter judgment.

Four months later, in May 2020, Taylor-Sanders moved to withdraw her guilty plea, asserting "she was told she had no choice but to plead guilty" and that "her plea was not knowing and voluntary because 'she did not fully understand the interplay between what her guideline range could be versus the final sentence.'" J.A. 107 (quoting Motion to Withdraw Plea, No. 3:19-cr-00147-RJC-DCK-1 (W.D.N.C. May 22, 2020), ECF No. 43).

6

She also asserted her legal innocence, arguing that she never acted with the requisite intent to defraud.

Evaluating the motion, the district court found that "[a] proper Rule 11 hearing was conducted," during which Taylor-Sanders "testified under oath that she understood the maximum penalty she faced, that she understood the terms of her Plea Agreement, that no additional promises had been made to her, that she was satisfied with her attorney, and that [the] Amended Factual Basis was true." J.A. 113. The court therefore denied Taylor-Sanders's motion to withdraw, concluding that Taylor-Sanders's claim was "not credible" and that she had "failed to establish a fair and just reason to justify withdrawal of her guilty plea." J.A. 110–11.

In October 2020, the district court conducted Taylor-Sanders's sentencing hearing. The Government presented testimony from an FBI agent about the insurance fraud investigation and testimony from a DW Express employee regarding the severe financial impact of Taylor-Sanders's fraud on DW Express's business. Taylor-Sanders took the stand and again disputed her guilt, claiming that the allegedly fictitious loans were not fabricated and that DW Express was responsible for the lapse in its insurance coverage.

The district court found that the Government's witnesses were credible, that the documents it submitted were consistent with the factual basis document and Presentence Investigation Report, and that the evidence "overwhelmingly establishe[d] a factual basis" for Taylor-Sanders's guilty plea. J.A. 238. In contrast, the district court found that Taylor-Sanders's testimony was not credible, noting Taylor-Sanders was "thoroughly impeached by her prior misstatements in other arenas." J.A. 238. The district court further found that

7

Taylor-Sanders had "engaged in a pattern of fraudulent activity over a lengthy period of time involving multiple businesses in which she received funds to obtain insurance policies, and on multiple occasions either failed to turn those funds over or . . . didn't apply for the insurance policy at all" and instead "used those funds for personal benefit and to make Ponzi payments so that she could keep the fraudulent scheme alive." J.A. 248.

The district court adopted the Presentence Investigation Report's calculation of Taylor-Sanders's offense level as 25, including a two-point increase for causing DW Express substantial financial hardship and another two-point increase for unauthorized use of a means of identification. Since Taylor-Sanders had a criminal history category of I, the district court calculated her Guidelines sentencing range as 57 to 71 months. It then sentenced Taylor-Sanders to 66 months' imprisonment, within that range, and entered judgment.

In December 2020, the Government requested more than $700,000 in total restitution. It sought $242,092.47 of restitution for harm to BankDirect Capital Finance. And for DW Express, the Government requested:

1) $125,363.80 for the value of the totaled truck and interest payments owed on a loan that financed the truck;

2) $21,821.25 for the loss of the flatbed trailer destroyed in the accident;

3) $62,874.59 for the total value of loan payments DW Express made to Taylor-Sanders that she failed to transfer to BankDirect Capital Finance;

4) $120,030.68 for towing fees, storage fees, cleanup costs, and destroyed cargo expenses that DW Express incurred because of the accident; and

5) $139,847.09 for the profits DW Express lost from April 2019 through April 2020 because it could not use the destroyed truck and trailer,[2]

for a total of $469,937.41.

On March 10, 2021, the district court ordered Taylor-Sanders to pay restitution in the amounts the Government requested.

Taylor-Sanders now raises several challenges to her guilty plea, sentence, and restitution order.[3] She argues that her guilty plea was not knowing and voluntary because of the stops and starts during her Rule 11 colloquy, that the district court miscalculated her offense level, and that the district court made several errors when awarding DW Express restitution. Among Taylor-Sanders's challenges to the restitution award is a claim that the district court lacked authority under the Mandatory Victims Restitution Act to award restitution for DW Express's lost profits.

## II.

### A.

At the outset, we must determine whether Taylor-Sanders's guilty plea and plea waiver were valid. *United States v. Blick*, 408 F.3d 162, 168–69 (4th Cir. 2005). While Taylor-Sanders's plea agreement contained an appeal waiver, the existence of such a waiver does not bar our review of the validity of the guilty plea and plea waiver. *See United States v. Wessells*, 936 F.2d 165, 167 (4th Cir. 1991).

---

[2] The Government estimated lost profits as the profits earned from a similar truck in the previous year.

[3] Taylor-Sanders timely appealed her conviction, sentence, and restitution order. We have jurisdiction pursuant to 28 U.S.C. § 1291.

9

"[W]e review the acceptance of a guilty plea under the harmless error standard." *United States v. Williams*, 811 F.3d 621, 622 (4th Cir. 2016). "Under harmless error review, '[a]ny deviation from the requirements of Rule 11 is reversible unless the government demonstrates that it was harmless.'" *United States v. Martinez*, 277 F.3d 517, 524 (4th Cir. 2002) (alteration in original) (quoting *United States v. Lyons*, 53 F.3d 1321, 1322 n.1 (D.C. Cir. 1995).

Rule 11 requires that, before accepting a guilty plea, a district court "must ensure that the defendant understands the nature of the charges to which the plea is offered, any mandatory minimum penalty, the maximum possible penalty, and the various rights the defendant is relinquishing by pleading guilty." *Williams*, 811 F.3d at 622. The district court must also "determine that the plea is voluntary and that there is a factual basis for the plea." *Id.* "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005). Accordingly, a properly conducted Rule 11 colloquy raises "a strong presumption that the plea is final and binding." *United States v. Bowman*, 348 F.3d 408, 414 (4th Cir. 2003) (quoting *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc)).

"Generally, if a district court questions a defendant regarding the waiver of appellate rights during [a properly conducted] Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver," we will also hold that the appeal waiver is valid. *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012); *see also United States v. Boutcher*, 998 F.3d 603, 608 (4th Cir. 2021) ("A 'valid' appeal waiver is

10

one entered by the defendant knowingly and intelligently, a determination that [the Court] make[s] by considering the totality of the circumstances.").

Here, the magistrate judge conducted a proper Rule 11 colloquy. The magistrate judge confirmed that Taylor-Sanders had reviewed the charge with counsel, understood the contents and possible consequences of her plea agreement, and was voluntarily pleading guilty. When Taylor-Sanders twice expressed concerns about the plea agreement or factual basis document, the magistrate judge provided a recess for her to convene with counsel and make any necessary changes to the plea agreement before proceeding.

While Taylor-Sanders claims the interruptions in the colloquy show her plea was not knowing or voluntary, they in fact demonstrate the opposite. The magistrate judge took great care in ensuring that Taylor-Sanders received the time she needed to fully understand the terms and consequences of her guilty plea. If the magistrate judge had ignored Taylor-Sanders's hesitations and continued the colloquy uninterrupted, that may have raised questions about Taylor-Sanders's knowingness. That the magistrate judge instead addressed her uncertainties by pausing the proceedings demonstrates that the process, though bumpy, constituted a full and proper Rule 11 colloquy. Accordingly, we hold that Taylor-Sanders's guilty plea is valid and binding.

We also conclude that Taylor-Sanders's appeal waiver was valid. The plea agreement unequivocally states that Taylor-Sanders waived "all rights to contest the conviction and sentence in any appeal" except for claims of ineffective assistance of counsel and prosecutorial misconduct. S.J.A. 636 ¶ 17. And during the Rule 11 colloquy, the magistrate judge explained the appeal waiver and Taylor-Sanders affirmed that she

11

understood it. Since Taylor-Sanders's appeal waiver was included in her plea agreement and addressed during the Rule 11 colloquy, and since the plea agreement was valid, her appeal waiver is also valid.

B.

Because Taylor-Sanders's plea agreement included a valid appeal waiver, we next consider whether the issues she raises on appeal fall within the scope of the waiver. In doing so, we interpret the plea agreement via basic principles of contract law, but "with a greater degree of scrutiny than we would evaluate a contract in a civil context." *Boutcher*, 998 F.3d at 608. "Nonetheless, courts cannot rewrite agreements or construe ambiguities when none exists." *Id.* at 608–09.

"[R]estitution is . . . part of [a] criminal defendant's sentence." *Cohen*, 459 F.3d at 496. And Taylor-Sanders's appeal waiver broadly and unambiguously bars claims regarding Taylor-Sanders's conviction and sentence. When an issue falls within the scope of a valid appeal waiver, we generally enforce the waiver by declining to hear the covered issues. *Adams*, 814 F.3d at 182. Each of the issues Taylor-Sanders raises on appeal regarding calculation of her offense level or restitution fall within that broad waiver, so we must dismiss her appeal.

To be sure, there are narrow circumstances in which we will not enforce an appeal waiver that is otherwise applicable. *See United States v. Broughton-Jones*, 71 F.3d 1143, 1146 (4th Cir. 1995) ("[E]ven valid appeal waivers will not bar appellate review of every sentence." (citing *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992))); *Marin*, 961 F.2d at 496 ("[A] defendant who waives his right to appeal does not subject himself to

12

being sentenced entirely at the whim of the district court."). One exception permits us to review claims that the district court's sentence or restitution order exceeded the court's statutory authority. *Cohen*, 459 F.3d at 497–98. Taylor-Sanders attempts to frame one issue on appeal—her appeal regarding the district court's order of restitution for DW Express's lost profits—as falling under this exception. We are not persuaded.

We have stated that this exception permits "appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." *Marin*, 961 F.2d at 496. But in doing so, we have distinguished claims that a sentence is "illegal" because the district court lacked the *authority* to issue the sentence (which remain reviewable despite an appeal waiver) from claims that a sentence was "imposed in violation of law" because it has otherwise merely "been touched by a legal error" (in which case we will enforce the appeal waiver). *Thornsbury*, 670 F.3d at 539.

For example, if the district court imposes a term of imprisonment that exceeds the statutory maximum, the resulting sentence is *illegal* as beyond the court's authority, and our review will not be barred by an appeal waiver. *See Marin*, 961 F.2d at 496. But while a district court's failure to consider a nonfrivolous argument at sentencing might mean that a sentence is imposed in violation of law, that is a legal error, the appeal of which can be barred by an appeal waiver. *See United States v. McGrath*, 981 F.3d 248, 250 (4th Cir. 2020).

In the restitution context, we have applied this exception to review claims that a district court lacked the authority to order restitution *at all*. *See Broughton-Jones*, 71 F.3d

13

at 1147 ("Because a restitution order imposed when it is not authorized by the [Victim and Witness Protection Act] is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum, appeals challenging the legality of restitution orders are similarly outside the scope of a defendant's otherwise valid appeal waiver."). But we held in *United States v. Boutcher* that when a district court commits legal error by valuing restitution as the amount of a defendant's profit rather than of a victim's loss, that error falls within the scope of an appeal waiver because it challenges the *amount* of restitution rather than the court's authority to impose restitution at all. *Boutcher*, 998 F.3d at 610 (citing *Cohen*, 459 F.3d at 497–500).

Here, the restitution order included $139,847.09 for a year of DW Express's lost profits. This amount was calculated based on the profits from a truck similar to the totaled truck in the year preceding the wreck, on the theory that, but for Taylor-Sanders's fraud, DW Express would have quickly replaced the wrecked truck and trailer with insurance proceeds and continued to enjoy profits from their use. Taylor-Sanders argues that this portion of the restitution order exceeded the scope of the court's authority because "[t]he plain language in 18 U.S.C. § 3663A(b)(1) does not authorize a district court to order restitution for lost income in cases involving property." Opening Br. at 24.

Taylor-Sanders's argument is foreclosed by our decision in *Boutcher*.[4] Just like the defendant in *Boutcher*, Taylor-Sanders does not dispute that the Mandatory Victims Restitution Act permits restitution for the offense for which she was convicted. And this

---

[4] We express no opinion on the merits of Taylor-Sanders's interpretation of § 3663A(b)(1) and instead limit our analysis to whether the issue was waived.

14

case and *Boutcher* involve a claim that the district court misinterpreted the definition of restitution in § 3663A(b)(1) and by doing so erroneously increased the amount of restitution it ordered. Taylor-Sanders has not offered, and we cannot discern, any reason to distinguish the legal error claimed in *Boutcher* from that claimed here. Accordingly, we must also dismiss Taylor-Sanders's lost-profits claim.[5]

### III.

We conclude that each of Taylor-Sanders's claims on appeal are barred by the appeal waiver in her guilty plea. Therefore, her appeal is

*DISMISSED.*

---

[5] In addition to dismissing the appeal as to Taylor-Sanders's sentencing and restitution claims, we dismiss her appeal related to claims for ineffective assistance of counsel and prosecutorial misconduct. Taylor-Sanders raised those two issues without any substantive argument to avoid procedural default in the event of a post-conviction challenge. "A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (cleaned up). Because Taylor-Sanders fails to raise substantive arguments on these issues, we dismiss them as waived.