**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-4190**

───────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

STANLEY RAY LUBKIN,

Defendant – Appellant.

───────────────

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Mary G. Lewis, District Judge.  (3:20−cr−00782−MGL−1)

───────────────

Argued:  November 1, 2024                    Decided:  December 4, 2024

───────────────

Before WILKINSON, QUATTLEBAUM, and HEYTENS, Circuit Judges.

───────────────

Appeal dismissed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Quattlebaum and Judge Heytens joined.

───────────────

**ARGUED:**  Jeremy A. Thompson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Elliott Bishop Daniels, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Suha Najjar, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Jade A.Y. Ford, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Adair F. Boroughs, United States Attorney, Kathleen Stoughton, Appellate Chief, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

WILKINSON, Circuit Judge:

Stanley Lubkin pleaded guilty to possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g), 924(a), and 924(e). In exchange for several concessions from the government, he signed a plea agreement. That agreement also included a concession from Lubkin in the form of an appeal waiver. Lubkin agreed to waive his right to appeal both his conviction and his sentence. The indictment, plea agreement, and plea colloquy all alerted Lubkin to the possibility that because of his prior convictions, the court might sentence him as an armed career criminal, which would mean a mandatory minimum of 15 years and a maximum of life in prison. The district court later sentenced Lubkin as an armed career criminal to 15 years in prison. Lubkin now appeals his sentence, arguing that the court erred in finding that he was an armed career criminal. Because this argument falls within the scope of Lubkin's valid appeal waiver, we dismiss his appeal.

I.

A.

After a confrontation with police officers in December 2018, Stanley Lubkin was found in a stolen vehicle with a pistol. A federal grand jury in the District of South Carolina returned an indictment charging him with three counts. Count 1 charged Lubkin with possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). Count 2 charged him with carjacking in violation of 18 U.S.C. § 2119, and Count 3 with discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). J.A. 11–12, 58–59.

2

After extensive negotiations between the government and his counsel, Lubkin signed a plea agreement on July 14, 2022. He agreed to plead guilty to Count 1, the § 922(g) felon-in-possession charge. The agreement stated that if Lubkin had at least three prior convictions for a "violent felony" or a "serious drug offense," he would face a mandatory minimum sentence of 15 years and a maximum of life in prison under 18 U.S.C. § 924(e), the Armed Career Criminal Act (ACCA). Otherwise, the maximum term of imprisonment would be 10 years under § 924(a)(2).[1] The plea agreement had an appeal waiver:

> The Defendant is aware that 18 U.S.C. § 3742 and 28 U.S.C. § 2255 afford every defendant certain rights to contest a conviction and/or sentence. Acknowledging those rights, the Defendant, in exchange for the concessions made by the Government in this Plea Agreement, waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. This waiver does not apply to claims of ineffective assistance of counsel, prosecutorial misconduct, or future changes in the law that affect the Defendant's sentence.

J.A. 25. Both Lubkin and his counsel signed the plea agreement, affirming that Lubkin did so "as a matter of [his] free and voluntary choice." J.A. 19–26, 325.

In exchange for Lubkin's agreement to plead guilty to Count 1 and to abide by the appeal waiver, the government made several concessions. First, the government agreed to drop the remaining charges of carjacking and discharging a firearm. Second, it agreed to recommend that Lubkin not be prosecuted for his conduct under state law. And third, the

---

[1] For offenses committed after June 2022, Congress increased the maximum sentence for § 922(g) offenses from 10 to 15 years. *See* 18 U.S.C. § 924(a)(8).

government agreed not to pursue an attempted murder cross-reference or a two-level stolen-firearm enhancement at sentencing. J.A. 21, 24–25.

Lubkin signed a supplemental agreement with the government. It stated that Lubkin had three prior convictions for manufacturing methamphetamine in violation of South Carolina law. Lubkin stipulated that these "three convictions were committed on 'occasions different from one another' within the meaning of the Armed Career Criminal Act." The agreement confirmed that nothing therein "represents a concession that the enhanced penalty provided by the Armed Career Criminal Act applies, which is a question reserved for the Court to decide at sentencing." J.A. 28–29.

## B.

On July 19, 2022, Lubkin appeared before the district court to plead guilty to Count 1 under the terms of his plea agreement. The court conducted a plea colloquy pursuant to Federal Rule of Criminal Procedure 11. The judge first concluded that there were no "issues of competency." Lubkin had attended high school through the eleventh grade and had never been treated for drugs, alcohol, or mental illness. The judge then asked Lubkin a series of questions to confirm that his plea was knowing and voluntary. Lubkin's counsel confirmed that she had reviewed "the charges, the punishment, and his rights" with her client. The prosecutor summarized the facts underlying Count 1 and the range of penalties, including the potential 15-year mandatory minimum under the ACCA. The judge inquired whether Lubkin understood "the nature of this charge against you and the range of potential punishments you face." Lubkin said yes. J.A. 35–49.

4

The court then had the prosecutor summarize the signed plea agreement. The prosecutor noted that Lubkin "has agreed to give up [his] appeal rights" subject to "three narrow exceptions." The judge confirmed that Lubkin had reviewed the agreement with his counsel and that he had signed it. As required by Rule 11(b)(1), the judge specifically "point[ed] out" the "appellate waiver," which she read aloud and confirmed that Lubkin understood. The court accepted Lubkin's guilty plea. J.A. 50–61.

C.

Before Lubkin's sentencing hearing, the probation office prepared a presentence report (PSR). The PSR found that Lubkin's three prior manufacturing methamphetamine convictions under South Carolina law qualified as predicate "serious drug offenses" under the ACCA. Because Lubkin had three qualifying predicate offenses, the PSR concluded that he was an armed career criminal subject to the ACCA's enhanced penalty. Lubkin objected. He argued that because South Carolina's definition of methamphetamine was categorically broader than the federal definition, his convictions did not qualify as valid ACCA predicates and he was therefore not an armed career criminal. The government argued in favor of the PSR's determination. J.A. 64–65, 150–51, 154.

The district court held a sentencing hearing on March 14, 2023. Lubkin and the government presented their arguments, and experts on behalf of each party testified. The court ruled that Lubkin's three prior manufacturing methamphetamine convictions qualified as predicate offenses under the ACCA and sentenced him as an armed career criminal to the mandatory minimum of 15 years in prison. J.A. 191, 312, 336.

5

Lubkin appealed his sentence. Because we conclude that Lubkin's appeal waiver is valid and his arguments fall within the waiver's scope, we dismiss the appeal without addressing the parties' arguments on the merits.

II.

Lubkin contends that his appeal waiver does not preclude him from challenging his sentence. His argument, which addresses the merits, proceeds in three steps. One, Lubkin claims that the district court erred in classifying him as an armed career criminal because it erroneously concluded that his prior convictions under South Carolina law qualified as predicate "serious drug offenses" under the ACCA. Two, his 15-year sentence under the ACCA exceeded the 10-year statutory maximum that should have applied without the allegedly erroneous ACCA enhancement. Three, his sentence was therefore "illegal," and his appeal lies beyond the scope of the waiver. Reply Brief at 3–4. The government argues that Lubkin's appeal falls squarely within the scope of his valid appeal waiver and requests that we dismiss. Response Brief at 10–17.

We review "the validity and effect" of an appeal waiver de novo. *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012). "We have consistently held that appellate waivers in valid plea agreements are enforceable." *United States v. Soloff*, 993 F.3d 240, 243 (4th Cir. 2021). Where "there is no claim that the United States breached its obligations under the plea agreement," we enforce an appeal waiver if the record shows (1) "that the waiver is valid" and (2) "that the issue being appealed is within the scope of the waiver." *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005).

6

A.

An appeal waiver is valid "if the defendant's agreement to the waiver was knowing and intelligent." *Thornsbury*, 670 F.3d at 537. We look at the "totality of the circumstances," including the clarity of the waiver's text and "whether the district court sufficiently explained the waiver" at the defendant's "plea colloquy." *United States v. Manigan*, 592 F.3d 621, 627 (4th Cir. 2010); *see also United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002). In "the absence of extraordinary circumstances, a properly conducted Rule 11 colloquy establishes the validity of the waiver." *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016).

All of the customary indicia show that Lubkin's appeal waiver is valid. First, the waiver's text was clear. Paragraph 12 of the plea agreement indicated that by signing the document, Lubkin "waives his right to contest either the conviction or the sentence in any direct appeal." J.A. 25. Lubkin and his counsel voluntarily signed the agreement. J.A. 26.

Next, Lubkin's plea colloquy addressed the appeal waiver in detail. The court confirmed that Lubkin was educated and competent and that his attorney had explained to him both the charges and the punishments. *See* J.A. 35–37. The court had the government summarize the plea agreement "paragraph by paragraph," including the appeal waiver and its three exceptions. J.A. 50, 52–53. The judge then confirmed that Lubkin had "reviewed [the] plea agreement" ("Yes, ma'am"); had "been over it" and "discussed it with" his lawyer ("Yes, ma'am"); had "underst[ood]" the agreement ("Yes, ma'am"); and had signed it ("Yes, ma'am"). J.A. 53–54. The judge then circled back to the appeal waiver, read it aloud, and noted its exceptions. At this point, the judge asked Lubkin *three* times whether

7

he understood the terms of his appeal waiver and was "aware of the appellate rights you're waiving." Lubkin responded in the affirmative three times. *See* J.A. 55–56. Immediately after this, the judge asked, "Do you still wish to plead guilty?" ("Yes, ma'am"). J.A. 56. The court then found that Lubkin was "fully competent and capable of entering an informed plea" and that his plea was "knowing and voluntary." J.A. 61.

And Lubkin had ample notice that his sentence might include an ACCA enhancement. Count 1 of the indictment, to which Lubkin pleaded guilty, referred to the ACCA penalty. *See* J.A. 11 (citing § 924(e)). The plea agreement explicitly discussed a potential 15-year mandatory minimum sentence under the ACCA in a section titled "The penalty for this offense." J.A. 20. The second agreement that Lubkin signed was relevant *only* in the context of an ACCA sentence, and it explicitly noted that whether "the enhanced penalty provided by the Armed Career Criminal Act applies" was "a question reserved for the Court to decide at sentencing." J.A. 29. At the plea colloquy, Lubkin's counsel said that she had "explained to Mr. Lubkin" that whether he is an armed career criminal will be a "sentencing issue." J.A. 34. And in summarizing the indictment, the prosecutor highlighted the potential 15-year mandatory minimum under the ACCA if "the Court at sentencing concludes that he has three prior [predicate] convictions." J.A. 49. After all this, the judge asked Lubkin whether he understood "the range of potential punishments you face." "Yes, ma'am," Lubkin responded. J.A. 49. Bound by the appeal waiver, he then pleaded guilty.

The crystal-clear plea agreement and forthright plea colloquy here are consistent with our cases that have held appeal waivers to be valid. *See, e.g.*, *Blick*, 408 F.3d at 169; *United States v. Boutcher*, 998 F.3d 603, 608 (4th Cir. 2021). Because all signs point to a

knowing, intelligent, and voluntary appeal waiver, we conclude that Lubkin's appeal waiver is valid and now consider its scope.

B.

To determine the scope of an appeal waiver, we "look to the plain language of the agreement, construing it in the ordinary sense." *Boutcher*, 998 F.3d at 608. We also consider a few "narrow exceptions" to our rule that an appeal waiver is enforceable as to issues within its scope. *United States v. Taylor-Sanders*, 88 F.4th 516, 519 (4th Cir. 2023). We conclude that Lubkin's argument that the district court legally erred during sentencing falls within the scope of his appeal waiver and our circuit's limited exceptions do not apply.

We start with the text of the waiver. As discussed, Lubkin had repeated notice across the indictment, plea agreement, supplemental agreement, and plea colloquy that his sentence could include an ACCA enhancement. Lubkin then waived his right to "contest . . . *the sentence* in any direct appeal." J.A. 25 (emphasis added). Now Lubkin contests his sentence in a direct appeal. Unless some exception applies, the waiver clearly forecloses this appeal.

The waiver itself identifies three limited exceptions. Lubkin does not argue that any of them applies, and it is clear that none does. There is no claim of ineffective assistance of counsel or prosecutorial misconduct. And there have been no changes to the law brought to our attention that "affect" Lubkin's sentence.

Because he cannot identify a textual hook in the waiver that allows his appeal, Lubkin invokes our exception in *United States v. Marin*, 961 F.2d 493 (4th Cir. 1992). A defendant may always contest a "sentence imposed in excess of the maximum penalty

9

provided by statute." *Id.* at 496. Because a sentencing court does "not have the statutory authority to impose" a sentence exceeding the statutory maximum, *United States v. Cornette*, 932 F.3d 204, 209 (4th Cir. 2019), such a sentence is "illegal" and therefore appealable notwithstanding a waiver, *Thornsbury*, 670 F.3d at 539. Lubkin argues that his sentence exceeds the statutory maximum and is "illegal."[2]

On its face, this exception does not apply because Lubkin's sentence plainly does not exceed the statutory maximum. The district court sentenced Lubkin to 15 years under the ACCA. The ACCA provided for a mandatory minimum of 15 years and a maximum of life. *See* 18 U.S.C. § 924(e)(1). Far from exceeding the statutory maximum, the district court gave Lubkin the lowest possible sentence it was authorized to give. So *Marin* alone cannot save Lubkin.

But as discussed, Lubkin offers a multi-step argument that his 15-year sentence did in fact exceed the statutory maximum and was therefore "illegal." He first claims that the trial court erred in concluding that he was an armed career criminal based on his prior drug convictions and therefore erred in enhancing his sentence under the ACCA. Lubkin then contends that his allegedly erroneous 15-year sentence exceeded the unenhanced 10-year statutory maximum that, in Lubkin's view, *should have* applied to his conviction. He thus

---

[2] Lubkin does not invoke any of our other exceptions for circumventing an appeal waiver. Those apply when a sentence was "based on a constitutionally impermissible factor such as race," *Marin*, 961 F.2d at 496; when a sentence was imposed after proceedings conducted in violation of the Sixth Amendment, *United States v. Attar*, 38 F.3d 727, 732–33 (4th Cir. 1994); and when enforcing the waiver "would result in a miscarriage of justice," such as where there is a "cognizable claim of actual innocence," *Adams*, 814 F.3d at 182.

asks us to ignore his appeal waiver, evaluate his sentence on the merits, and then compare his allegedly erroneous sentence to the statutory maximum of the statute that would have applied had the court not improperly relied on the ACCA. To support his argument that an erroneously enhanced ACCA sentence is "illegal" and bypasses a valid appeal waiver under the *Marin* exception, Lubkin directs us to our decision in *United States v. Cornette*.

Lubkin misreads *Cornette*. The *Cornette* court did not look into the merits of Cornette's specific case and did not grapple with whether his prior convictions qualified as "violent felonies" under the ACCA. Instead, *Cornette* was decided in "the unique context" of the Supreme Court entirely invalidating ACCA's residual clause as unconstitutional. *Cornette*, 932 F.3d at 206–07 (citing *Johnson v. United States*, 576 U.S. 591 (2015)). The district court had relied on that unconstitutional provision to sentence Cornette. Because the provision was unconstitutional, "*all* sentences rendered under the residual clause became unconstitutional." *Id.* at 209 (emphasis added). Therefore, "every person in the class of persons sentenced under the residual clause" was serving an "illegal" sentence. *Id.* at 210. The statutory provision that had authorized Cornette's sentence simply vanished. And with it evaporated the district court's authority to impose the sentence that it did. *See id.* In other words, ACCA's residual clause had actually authorized *no sentence at all*. And because of that, Cornette's sentence "was imposed 'in excess of the maximum penalty provided by' ACCA" itself. *Id.* at 209 (quoting *Marin*, 961 F.2d at 496).

*Cornette* did not make the comparison Lubkin requests here. It did not compare Cornette's 18-year sentence to the statutory maximum of 10 years that *would have* applied to his felon-in-possession conviction without an ACCA enhancement. *Cornette* only

11

narrowly held that when an ACCA provision does not authorize a penalty for *anybody*, the impossible sentence imposed under that provision exceeds the statutory maximum *of that provision* and is therefore "illegal" and appealable under *Marin*.

Lubkin's situation is vastly different. There is no Supreme Court decision holding a provision of the ACCA unconstitutional. There is no claim that the court was stripped of its statutory authority to sentence defendants with predicate drug offenses under the ACCA. There is no dispute that the ACCA provision under which Lubkin was sentenced authorized a sentence of 15 years. Instead, Lubkin claims that the court made an error unique to his case when it applied an indisputably valid ACCA provision. Specifically, Lubkin contends that the district court erred in concluding that his three prior drug convictions under South Carolina law qualified as ACCA predicates and made him an armed career criminal. In other words, his enhanced sentence was *possible*, but the court allegedly made a mistake specific to his case. *Cornette*'s holding about impossible sentences based on invalid statutory provisions does not apply.

In short, Lubkin asks us to hold that an allegedly erroneous ACCA enhancement always renders a sentence "illegal" because it exceeds the statutory maximum that would have applied sans enhancement. Contrary to Lubkin's protestations, *Cornette* never said that, and we decline to expand our exception for "illegal" sentences so broadly.

Doing so would sanction an end run around appeal waivers in cases with enhanced sentences. Defendants with appeal waivers would, like Lubkin, appeal and argue that their erroneously enhanced sentence was "illegal" because it exceeded the statutory maximum that would have applied without the enhancement. We would then be required to assess the

12

merits of their sentencing claims in every case. And we would dismiss under the appeal waiver only if the defendant's claim failed on the merits. But "if that were the law, then appeal waivers would lose all effect." *United States v. Worthen*, 842 F.3d 552, 555 (7th Cir. 2016) (offering similar analysis). To have teeth, an appeal waiver must assume some risk of error. Lubkin's novel rule has defendants take on no risk at all—they always get a shot at correcting an error. But this court has refused to disregard appeal waivers in this context, and we do so here. *See, e.g.*, *United States v. Anderson*, 164 F. App'x 446 (4th Cir. 2006).

In sum, Lubkin's argument boils down to a claim of legal error. We have already held that claims of mere "legal error" fall firmly outside our exception for "illegal" sentences and do not circumvent valid appeal waivers. *Taylor-Sanders*, 88 F.4th at 524. We therefore enforce Lubkin's appeal waiver and do not consider his arguments on the merits.

## C.

Lubkin effectively asks us to hold that he has an unwaivable right to contest an allegedly erroneous sentence. But we have made clear that in a world where "fundamental constitutional rights" like the right to a jury trial are waivable, then "surely" the *statutory* right of appeal under 18 U.S.C. § 3742 can be waived. *United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990). Lubkin was free to preserve his right to appeal the district court's ACCA determination in one of two ways. He could have "refuse[d] to waive his right to appeal as a condition of the plea." *United States v. Brown*, 232 F.3d 399, 406 (4th Cir. 2000). Or he could have negotiated for a fourth exception in his waiver that would have

13

allowed him to contest his ACCA enhancement. Instead, Lubkin promised not to appeal his sentence at all. And we hold him to that promise.

III.

Accepting Lubkin's invitation to disregard his appeal waiver would also frustrate the bargain he made with the government. We have consistently held that "a defendant who waives his right to appeal for the purpose of obtaining concessions from the government 'may not . . . ignore his part of the bargain.'" *Blick*, 408 F.3d at 168 (quoting *Wiggins*, 905 F.2d at 54). Like any contract negotiation, plea bargaining involves give-and-take. Plea agreements like Lubkin's culminate in a set of "mutual promises," J.A. 19, which are made in exchange for some concession or benefit, *see United States v. Edgell*, 914 F.3d 281, 289 (4th Cir. 2019). An appeal waiver is one type of valuable promise a defendant may make. The defendant takes on the "risk of unforeseen legal errors involving his sentence," *Thornsbury*, 670 F.3d at 538, and gains some concession from the government in return. For its part, the government saves time and resources on appeal. To facilitate these negotiations, our job is to ensure that each party "receive[s] the benefit of its bargain." *Blick*, 408 F.3d at 173.

Lubkin won several concessions from the government during his plea negotiation. Two of them potentially saved Lubkin from facing decades in prison. First, the government promised to dismiss two serious charges, carjacking and discharging a firearm during a crime of violence. *See* J.A. 21. The latter carried a mandatory minimum sentence of 10 years, which would have run consecutively to Lubkin's sentence on the felon-in-possession charge. *See* 18 U.S.C. § 924(c)(1)(A)(iii), (D)(ii). The government fulfilled its promise and

14

moved to dismiss the two charges. J.A. 339. The government also promised not to pursue an attempted murder cross-reference at Lubkin's sentencing. J.A. 24. That "lowered the bottom end of his guidelines from 360 [months] down to 235 [months], more than 10 years." Oral Arg. at 30:50–31:11; *see* J.A. 318–19. And the government fulfilled that promise as well. J.A. 313. The government did not make these concessions to be nice. It bargained for something of value in exchange, including the expectation that it would save time and resources on appeal that it could allocate to other cases. The appeal waiver was only valuable to the government because it was an enforceable commitment by Lubkin not to file an appeal.

But when it came time for Lubkin to uphold his side of the bargain, he changed his mind and filed this appeal. The government here has regrettably lost much of its side of the bargain by having to brief the complex merits questions concerning the chemical composition of methamphetamine. In the future, the government should not have to brief merits claims like Lubkin's when they are plainly foreclosed by valid appeal waivers. These appeals should be resolved through motions to dismiss.

Doing otherwise would destroy the value of appeal waivers for all parties. Allowing a defendant to circumvent his signed appeal waiver deprives the government of its side of the bargain in that case. But it also decreases the value of those appeal waivers "as a bargaining chip in the plea process" for all future defendants because the probability of the government needing to expend resources on appeal increases. *Thornsbury*, 670 F.3d at 538. If Lubkin can "renege on his deal and maintain an appeal, then why would the government make these kinds of deals in the future?" *Worthen*, 842 F.3d at 555. By holding Lubkin to

15

his promise, we preserve the value of appeal waivers alongside the "chief virtues of the plea system—speed, economy, and finality." *Wiggins*, 905 F.2d at 54 (quoting *Blackledge v. Allison*, 431 U.S. 63, 71 (1977)).

IV.

Lubkin assumed the risk that the district court might make a legal error when sentencing him under the ACCA. Because Lubkin is now "attempting to do exactly what the appeal waiver forbids," *Blick*, 408 F.3d at 170, we dismiss his appeal. Bargains are something that both sides must keep.

*DISMISSED*

16