**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 18-4143

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIE D. MCCALL, a/k/a Derrick Armstead,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia at Charleston.  David A. Faber, Senior District Judge.  (2:17-cr-00050-1)

Argued:  March 21, 2019                    Decided:  August 12, 2019

Before FLOYD, HARRIS, and RICHARDSON, Circuit Judges.

Vacated and remanded by published opinion.  Judge Richardson wrote the opinion, in which Judges Floyd and Harris joined.

**ARGUED:**  Rachel Elizabeth Zimarowski, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Timothy Doyle Boggess, OFFICE OF THE UNITED STATES ATTORNEY, Beckley, West Virginia, for Appellee.  **ON BRIEF:**  Christian M. Capece, Federal Public Defender, Jonathan D. Byrne, Research & Writing Specialist, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Michael B. Stuart, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

RICHARDSON, Circuit Judge:

Willie D. McCall appeals his federal prison sentence for distributing 1.2 grams of methamphetamine. The Federal Sentencing Guidelines recommended a sentence of 30 to 37 months. But the sentencing court found the Guidelines range too low based on McCall's criminal history and a more elusive concern about the interstate nature of his conduct. So the court varied substantially upward and sentenced McCall to ten years in prison.

McCall argues that the district court erred in varying upward based on these two considerations. We agree that the court erred in relying on the interstate nature of McCall's offense because nothing in the record, except McCall's out-of-state residency, indicates that his offense involved the interstate transportation of methamphetamine. We therefore vacate McCall's sentence, and to ensure the appearance of impartiality, order his case be reassigned to a different judge for resentencing.

**I.**

On February 7, 2017, McCall sold 1.2 grams of methamphetamine to a confidential informant for $100 at a restaurant in Kanawha County, West Virginia. After the sale, law enforcement searched an apartment believed to be used by McCall and recovered a gun and about 615 grams of high-quality crystal methamphetamine. After he was indicted, McCall pleaded guilty to a single drug distribution count for selling the 1.2 grams of methamphetamine.

In addition to the 1.2 grams, the government sought to hold McCall responsible for the gun and methamphetamine found in the apartment. But, as part of sentencing, the

2

court found that none of the items from the apartment could be properly attributed to him. This reduced McCall's recommended term of imprisonment under the Sentencing Guidelines from twenty years to around three (30–37 months).[1]

This reduced sentencing range, the court found, would "not give the court the ability to impose a sentence that is necessary to comply with the statutory purposes of the Guidelines and the statutory objectives of [18 U.S.C. §] 3553." J.A. 125. It therefore varied upward and imposed a sentence of ten years. McCall timely appealed his sentence. We have jurisdiction to review it under 28 U.S.C. § 1291, and do so under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).

## II.

In support of its decision to impose a ten-year sentence, the district court reasoned that the interstate aspect of McCall's crime made it more serious. The court expounded on West Virginia's struggles with drugs brought from out-of-state: Because "[d]rugs are cheaper outside West Virginia[,] . . . [d]rug dealers buy the drugs at places outside of West Virginia and bring them into our communities where the prices are higher . . . ." J.A. 126. It then noted that "one of the principal places that the drugs come from that can be purchased cheaply is Detroit." J.A. 126. It added, "we've seen many cases where people from Detroit, places outside West Virginia, engage in this type of drug dealing. We have a serious problem here and it needs to be deterred . . . ." J.A. 127.

---

[1] While McCall also argues that the district court must have relied on the drugs and guns from the apartment in reaching his ten-year sentence, nothing in the record suggests that the court did so, and we will not presume it did.

3

McCall objected through counsel that his out-of-state residency was not a proper basis for imposing an enhanced sentence. And he argued that, although he is from Detroit, the government presented "[n]o evidence that the drugs he sold came from Detroit." J.A. 129. In response, the court claimed that the enhanced sentence was based on "a lot more here than just . . . his state of origin" and was not "intended in any way to reflect any prejudice against Mr. McCall's state of origin . . . ." J.A. 131; *see also* J.A. 132 (stating that McCall was "not being sentenced because he is from Detroit").

A court may not enhance a sentence based on bias against out-of-state defendants. *United States v. Diamond*, 561 F.2d 557, 559 (4th Cir. 1977). The *Diamond* defendants were convicted of theft from an interstate shipment. At sentencing, the district court made comments suggesting a bias against those from out of state: "the Court takes a dim view of people coming down from New York to commit their crimes in Virginia . . . . If they want to live and have their being in the State of New York, then let them have their source of a livelihood in the State of New York." *Id.* Finding such bias against out-of-staters improper, we vacated the sentences and remanded the case with instructions that it be assigned to a different judge for resentencing. *Id.*

That is not to say that the interstate nature of criminal conduct may never be considered at sentencing. This aspect of a crime could be relevant to the Section 3553(a) factors if it revealed something about the crime's scope, organization, or dangerousness. For example, a court might find that facts pointing to the importation of contraband across state lines reflect a more serious and coordinated offense than mere local distribution. *See United States v. McGee*, 736 F.3d 263, 273–74 (4th Cir. 2013) (finding

4

reasonable under the circumstances the court's partial reliance at sentencing on the fact that the defendant brought drugs in from out of state).

Along similar lines, the district court here did seek to justify McCall's sentence based on the interstate nature of drug trafficking generally—focusing its comments on the deterrent effect of imposing a harsh sentence. The judge explained the problems West Virginia faces because of drugs imported from Detroit. A stiff sentence, he appears to reason, was necessary to deter that "type of criminal conduct." J.A. 127. But herein lies the problem: nothing in the record supports the proposition that McCall bought the 1.2 grams of methamphetamine in Detroit for a low price and then imported the drugs into West Virginia to sell at a profit. And without at least some support for this claim, the district court erred in relying on it.

It is true that McCall was from Detroit and that McCall sold methamphetamine in West Virginia. But those facts alone—or even when combined with the understanding that drugs are cheaper in Detroit—fail to establish that McCall brought these drugs into West Virginia. Indeed, the facts fail to show that anyone, much less McCall, imported these drugs. A drug like cocaine must be imported because its primary raw ingredient, leaves from the coca plant, does not grow in Appalachia. But the same is not true for methamphetamine: while most high-purity methamphetamine originates outside our nation's borders (or in some cases, from "superlabs" operated by foreign cartels in a few

5

Western states), lower-quality methamphetamine is often made in local communities.[2] But the methamphetamine sold by McCall was not tested for purity, so the court could not even rely on such a generalization to infer where the drugs came from.[3]

And even if the Government could have shown that the methamphetamine was imported, that likely would not be enough, standing alone, to tie McCall to the importation rather than just the local distribution of methamphetamine. McCall may just as well have bought the drugs from a local supplier before selling them to the informant. Indeed, we are left with no reason to believe that this methamphetamine was manufactured out of state or that McCall obtained it outside West Virginia's borders.

As the facts fail to suggest that McCall's crime involved the interstate transportation of drugs, all that is left is his status as an outsider. And as the court below appears to have recognized, this could not serve as a valid basis for enhancing McCall's sentence. *Diamond*, 561 F.2d at 559. The court thus erred in varying upward based on this consideration.

---

[2] *See* DRUG ENFORCEMENT ADMIN., THE WEST VIRGINIA DRUG SITUATION, DEA-WAS-DIR-024-17, at 4 (2017); MICH. STATE POLICE, METHAMPHETAMINE REPORTING ACT, REPORT TO LEGISLATURE 5 (Apr. 1, 2018); HENRY H. BROWNSTEIN ET AL., THE METHAMPHETAMINE INDUSTRY IN AMERICA: TRANSNATIONAL CARTELS AND LOCAL ENTREPRENEURS 2, 17–20, 33–41 (2014).

[3] The methamphetamine seized from the apartment was found to be more than 95% pure. But, as previously stated, the district court found that none of the items from the apartment could be attributed to McCall.

## III.

McCall also argues that the district court erred in increasing his sentence based on his criminal history because that history was already accounted for by his Guidelines range.[4] We reject this point to the extent McCall argues that a district court may *never* vary upward based on prior convictions already included in the defendant's criminal history calculation under the Guidelines. "[A] fact that is taken into account in computing a Guidelines range is not excluded from consideration when determining whether the Guideline sentence adequately serves the four purposes of § 3553(a)(2)." *United States v. Shortt*, 485 F.3d 243, 252 (4th Cir. 2007). Yet we need not address any argument that this large upward variance could not be supported by his specific criminal history. That is because, as we will now explain, the sentence must be vacated regardless of this issue.

## IV.

Having found one of two factors the district court relied on to be improper, we must decide whether that error requires resentencing. Here, the record fails to show that the judge would have imposed the same sentence based solely on concerns about McCall's criminal history. Thus, we must vacate his sentence and remand for

---

[4] McCall has a long criminal record. In 1999, when he was sixteen years old, he was convicted as an adult of carjacking and assault with intent to murder. Paroled at eighteen, he was convicted of delivery of a controlled substance at age twenty; after being paroled a second time, he earned convictions for attempted possession of a controlled substance at twenty-three and for domestic violence and possession of a firearm in 2011 at twenty-eight. After serving five years, he was again released on parole in September 2016 until he was caught distributing methamphetamine in early 2017.

resentencing. *See United States v. Hargrove*, 701 F.3d 156, 161–62 (4th Cir. 2012); *United States v. Kochekian*, 977 F.2d 905, 906 (4th Cir. 1992).

When we remand a case, we may reassign it to a different judge when "the appearance of fairness and impartiality is best advanced by reassignment." *United States v. Neal*, 101 F.3d 993, 1000 n.5 (4th Cir. 1996). In deciding whether to reassign a case, we may consider "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected"; "(2) whether reassignment is advisable to preserve the appearance of justice"; and "(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010)(quoting *United States v. Guglielmi*, 929 F.2d 1001, 1007 (4th Cir. 1991)).

We must seek to avoid both actual bias and the mere appearance of bias. To be clear, we do not question in the slightest the district court's good faith or impartiality. But we also must be concerned about the public's perception of bias, including the possible perception of bias against McCall as an out-of-state defendant.

The burdens of reassignment do not outweigh this concern. We will more freely reassign a case when it will not require substantial duplication of effort. *Nicholson*, 611 F.3d at 217–18. After presiding over lengthy, involved litigation, a district court will likely have useful knowledge that would be difficult for a new judge to acquire. By contrast, a new judge should be able to get up to speed quickly for sentencing a single

8

defendant after a guilty plea. As McCall pleaded guilty to a straightforward drug distribution offense, we do not believe that reassigning this case will require disproportionate effort from the new presiding judge. Accordingly, we find it appropriate for this case to be reassigned on remand.

*     *     *

District courts are entitled to wide berth when they weigh the factors set forth in Section 3553(a) to reach appropriate sentences. In most instances, their judgments should be left alone by those of us whose knowledge is limited to documents and transcripts. But that deference is not unlimited. For the reasons stated, we vacate McCall's sentence and remand for a new sentencing hearing by a different judge.

*VACATED AND REMANDED*