**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4338

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

QUAMAINE DONELL SMITH, a/k/a Animal,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Terrence W. Boyle, District Judge.  (4:21-cr-00058-BO-1)

Argued:  December 11, 2024                                    Decided:  April 14, 2025

Before WYNN and THACKER, Circuit Judges, and FLOYD, Senior Circuit Judge.

Vacated and remanded by published opinion.  Judge Thacker wrote the opinion in which Judge Wynn and Judge Floyd joined.

**ARGUED:**  Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

THACKER, Circuit Judge:

Quamaine Donell Smith ("Appellant") pled guilty to robbery and using/brandishing a firearm during and in relation to a crime of violence. In his written plea agreement, Appellant waived his right to appeal his sentence. The district court subsequently sentenced Appellant to 144 months of imprisonment.

On appeal, Appellant argues that his appeal waiver is invalid because the district court failed to properly conduct the plea hearing and because the appeal waiver was not knowing and voluntary. Therefore, Appellant urges us to vacate his sentence as procedurally unreasonable because the court failed to acknowledge his non-frivolous mitigation arguments or provide an explanation for the sentence.

We hold that Appellant's appeal waiver was not knowingly and intelligently made and that enforcing the appeal waiver would result in a miscarriage of justice. Therefore, we vacate the sentence as procedurally unreasonable and remand for reassignment to a different district court judge for further proceedings.

I.

In May 2021, Appellant, along with a co-defendant, robbed a gas station in New Bern, North Carolina. The robbery was captured on a surveillance video, which was obtained by law enforcement. Appellant entered the store armed with a revolver. He approached the counter, pointed the revolver at the cashier, and demanded money. Appellant then ran behind the counter, struck the cashier on the head with the revolver, and took cartons of cigarettes as well as money from the register. The surveillance video showed Appellant and his co-defendant leaving in a Honda CRV. A witness took a photo

of the vehicle and provided it to the investigating officers. The photo showed that the vehicle had a pink trim vinyl sticker on the body, a white, diamond-shaped sticker on the driver's side of the rear windshield, and a baby on board sticker. A witness to the robbery chased Appellant and his co-defendant, flagged down a police officer during the chase, and identified the Honda CRV as the getaway vehicle.

The following day, law enforcement located the getaway vehicle, which was registered to the father of Appellant's co-defendant, outside a residence. In plain view inside the vehicle, officers saw unopened packages of cigarettes matching the type stolen from the gas station. While the officers were at the home, Appellant and his co-defendant exited the residence and were arrested. During a frisk of Appellant, officers recovered more cigarettes in Appellant's backpack. The loaded revolver, which was used during the robbery, was recovered during a consensual search of the home's garage.

Appellant was indicted for robbery in violation of 18 United States Code ("U.S.C.") § 2 and 18 U.S.C. § 1951 (Count One), using/brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Two), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Three).

Appellant agreed to plead guilty to Counts One and Two. As part of the plea agreement, Appellant agreed:

> To waive knowingly and expressly the right to appeal the conviction and whatever sentence is imposed on any ground, including any appeal pursuant to 18 U.S.C. § 3742, and further to waive any right to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding

3

under 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

J.A. 26.[1]

For its part, the Government agreed to dismiss Count Three of the indictment and to recommend a sentencing adjustment for acceptance of responsibility.

On February 16, 2022, the district court conducted a plea hearing, which lasted 16 minutes. The court confirmed with defense counsel and the Government that they had no concerns about Appellant's competency to enter a guilty plea and found Appellant competent to proceed.

The district court questioned whether Appellant was satisfied with his attorney, and Appellant indicated that he was. The court questioned whether Appellant understood that, by pleading guilty, he would "waive" or "give . . . up" various rights, including the right to a jury trial at which he would have the presumption of innocence, the right to confront and cross-examine witnesses, the right to counsel, the right to call witnesses, the right to testify, and the protection against self-incrimination. J.A. 16. Appellant responded, "Yes, sir." *Id.*

The district court determined that Appellant had received a copy of the indictment and informed Appellant that the elements of the crimes to which he was pleading guilty

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

were set out in the plea agreement "in paragraph 3 on pages 4, 5, and 6." J.A. 18. But, the court did not review the elements of the crimes with Appellant. With respect to Count One, the court stated, "interference with commerce by robbery and aiding and abetting in that," is "a 20-year crime, a fine, supervised release, and special assessment." *Id.* at 17. With respect to Count Two, the court stated, "brandishing a firearm during a crime of violence and aiding and abetting in that," is "seven years in addition to any other punishment." *Id.* With respect to Count Three, the court stated, "[p]unishment for that is up to ten years in prison, a fine and supervised release." *Id.* In response to the court's questions regarding whether the court had accurately described the crimes to which Appellant was pleading guilty and whether he understood the charges and the punishments that he faced, Appellant again stated, "Yes, sir." *Id.* at 17, 18.

Regarding Appellant's appeal waiver, the district court explained: "you're entering into a plea agreement in which you plead guilty to . . . Counts One and Two of the indictment and waive your right to appeal and waive your right to contest the conviction in any post-conviction proceeding." J.A. 17. After a summarization of the remainder of the plea agreement, the court asked, "Is that what you've agreed to?" Appellant stated, "Yes, sir." *Id.* at 18.

The Government provided a factual basis for the crimes to which Appellant was pleading guilty. The Government recited Appellant's conduct during the robbery and noted how witnesses had assisted the police investigation. Then, the Government explained how officers discovered Appellant the day after the robbery and recovered evidence of the crime

5

from inside the getaway vehicle, Appellant's backpack, and the garage of the residence where Appellant and his co-defendant were located.

Thereafter, Appellant was sentenced on May 25, 2022. The sentencing hearing was even shorter than the plea hearing, lasting just 13 minutes. The district court adopted the presentence investigation report ("PSR"), which provided for a United States Sentencing Guidelines ("Guidelines") imprisonment range of 57–71 months for Count One and a consecutive, mandatory minimum imprisonment range of 84 months to life imprisonment for Count Two.

At the sentencing hearing, Appellant's counsel presented a number of arguments in support of mitigation. Namely, Appellant's counsel argued for a downward variance based on the fact that Appellant was "completely cooperative" with law enforcement, "completely admitted what he did," and showed that he was "sincerely remorseful" by writing an apology letter to the gas station clerk. J.A. 36. Appellant's counsel further argued that Appellant had a history of severe mental illness, namely Schizotypal Personality Disorder,[2] noting that Appellant entered inpatient care starting when he was 16

---

[2] *See* Cleveland Clinic, *Schizotypal Personality Disorder*, https://perma.cc/8FKQ-FY2P (last accessed February 27, 2025).

> Schizotypal personality disorder is one of a group of conditions called "Cluster A" personality disorders, which involve unusual and eccentric thinking or behaviors. Personality disorders are chronic (long-term) dysfunctional behavior patterns that are inflexible, prevalent and lead to social issues and distress. People with schizotypal personality disorder typically display unusual behavior, odd speech and magical beliefs.

(Continued)

6

years old. Appellant's counsel highlighted that Appellant was not taking his medication at the time of the robbery and that Appellant also had a significant history of heavy drug use, including methamphetamine and heroin, exacerbated by his father's death in 2020. Appellant's counsel further noted that Appellant had recently lost several family members and that he was a caregiver to his wife, who is fully disabled.

Therefore, Appellant's counsel sought a downward variance to 96–120 months of imprisonment. In further support of the variance, Appellant's counsel argued:

> [A] below [G]uideline[s] sentence can still . . . be sufficiently punitive and sufficiently deterrent. The longest previous sentence he has served was four years. Even if you gave him twice that or even a little bit more, you don't have to go as high as the [G]uidelines ask for. . . . [Appellant] understand[s] that a lengthy sentence is warranted and necessary in this case, but . . . it doesn't have to be as lengthy as the [G]uidelines call for in this case.

J.A. 37.

In opposition to the downward variance, the Government noted that Appellant did not play a lesser role in the offense, that it was not his first felony, that he committed another assault soon after the instant offense,[3] and "there [was] nothing in [Appellant's record]" warranting a downward variance." J.A. 38. The Government, therefore,

---

*Id.*

[3] According to the PSR, on June 13, 2021, less than a month after the instant offense Appellant punched a victim in the face several times. Appellant pled guilty to simple assault in state court on August 25, 2021.

7

requested a within Guidelines sentence for Count One followed by a consecutive 84 months

of imprisonment for Count Two.

In allocution, Appellant stated:

> I want to apologize, Your Honor. I made a big mistake. I made a big mistake. I'm tired. I'm tired of living like this, Your Honor. And I'm trying to see my son graduate. You know what I'm saying? My wife out there, see, I left her out there. I left my mama out there. She's sick. I don't know what I was thinking. I can't do this. I can't keep doing this. I'm giving my -- too much time away. I can do better than this. I know I can. Please, I'm just -- I'm sorry, Your Honor.

J.A. 35.

With respect to the 18 U.S.C. § 3553(a) sentencing factors, the district court stated

that it had "considered [the imprisonment range prescribed by the Guidelines] as well as

other relevant factors set forth in the advisory sentencing [G]uidelines and those set forth

in 18 [U.S.C] 3553(a)." J.A. 39–40. The court sentenced Appellant to 60 months of

imprisonment for Count One, which was on the lower end of the Guidelines range, and to

the mandatory minimum consecutive 84 month sentence for Count Two, for a total term of

144 months of imprisonment.

As to Appellant's appeal rights, the district court stated:

> Quamaine Donell Smith, you can appeal your conviction if you believe your guilty plea is somehow unlawful or involuntary or if there is some other fundamental defect in the proceeding that was not waived by your guilty plea. You have the statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law. However, a Defendant may waive those rights as part of a plea agreement. If you have entered into such a plea agreement which waives some or all of your rights to appeal the sentence itself, such waivers are enforceable, but if you do not believe

8

> the waiver is enforceable you can present that theory to the
> Court of Appeals.

J.A. 41–42.

On appeal, Appellant timely filed a brief pursuant to *Anders v. California*,[4] questioning the sufficiency of the district court's explanation for Appellant's sentence but noting that the claim fell within the scope of the appeal waiver contained in the plea agreement. The Government moved to dismiss the appeal based on the appeal waiver.

## II.

We review the validity of an appeal waiver de novo by considering whether the waiver was knowing and voluntary based on the totality of the circumstances. *See United States v. Wiggins*, 905 F.2d 51, 54 (4th Cir. 1990); *United States v. Wessells*, 936 F.2d 165, 167–68 (4th Cir. 1991); *United States v. Johnson*, 410 F.3d 137, 151, 153 (4th Cir. 2005); *United States v. Thornsbury*, 670 F.3d 532, 537–38 (4th Cir. 2012); *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir. 2013); *United States v. Boutcher*, 998 F.3d 603, 608 (4th Cir. 2021); *United States v. Taylor-Sanders*, 88 F.4th 516, 522 (4th Cir. 2023).

Nevertheless, where "a defendant fails to move in the district court to withdraw his or her guilty plea," but seeks to withdraw the plea agreement on appeal and challenge the forfeited Rule 11 errors, we review for plain error. *See United States v. Williams*, 811 F.3d

---

[4] *Anders v. California*, 386 U.S. 738 (1967). Counsel is permitted to submit an *Anders* brief when, after fully performing his duty to represent his client, counsel determines that the appeal is "so frivolous that counsel should be permitted to withdraw." *Penson v. Ohio*, 488 U.S. 75, 82 (1988) (citation omitted).

9

621, 622 (4th Cir. 2016) (citing *United States v. Martinez*, 277 F.3d 517, 524 (4th Cir. 2002)); *United States v. Kemp*, 88 F.4th 539, 544–45 (4th Cir. 2023).

We "review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). In reviewing whether a sentence is reasonable, we "ensure that the district court committed no significant procedural error, such as by 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020) (quoting *Gall*, 522 U.S. at 51) (internal quotation marks omitted); *see United States v. Luong*, 125 F.4th 147, 156 (4th Cir. 2025).

III.

A.

Appropriate Standard of Review

Appellant and the Government, relying on different strands of our precedent, disagree about the appropriate standard for determining whether to enforce an appeal waiver. Appellant argues that de novo review should apply. In support, Appellant points to *United States v. Boutcher*, where we stated, "[w]e review [the validity of] an appellate waiver de novo to determine whether the waiver is enforceable." 998 F.3d 603, 608 (4th Cir. 2021) (citation omitted) ("A valid appeal waiver is one entered by the defendant knowingly and intelligently, a determination that we make by considering the totality of the circumstances." (citing *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012)

10

(internal quotation marks omitted))). In contrast, the Government contends that plain error review applies to "[u]npreserved Rule 11 violations." Gov't's Supp. Resp. Br. at 15 (citing *United States v. Martinez*, 277 F.3d 517, 524 (4th Cir. 2002)).

In the line of precedent that Appellant identifies, we have reviewed de novo the validity of appeal waivers and declined to enforce invalid (i.e., unknowing and involuntary) appeal waivers where an appellant contests the validity of the appeal waiver as opposed to the validity of his entire plea agreement. *See United States v. Wiggins*, 905 F.2d 51, 54 (4th Cir. 1990); *United States v. Wessells*, 936 F.2d 165, 167–68 (4th Cir. 1991); *United States v. Johnson*, 410 F.3d 137, 151, 153 (4th Cir. 2005); *Thornsbury*, 670 F.3d at 537–38; *Boutcher*, 998 F.3d at 608; *United States v. Taylor-Sanders*, 88 F.4th 516, 522 (4th Cir. 2023).

In the line of precedent on which the Government focuses, we have reviewed the validity of plea agreements under a plain error standard of review where an appellant contests the validity of his entire plea agreement by challenging his conviction and seeks to withdraw his guilty plea as a result of Rule 11 errors affecting his decision to enter into the plea agreement. *See Martinez*, 277 F.3d at 524; *United States v. Williams*, 811 F.3d 621, 622 (4th Cir. 2016); *United States v. Kemp*, 88 F.4th 539, 544–45 (4th Cir. 2023).

We discern no disharmony between these two lines of cases. Where an appellant does not seek to withdraw his underlying plea, but instead challenges the appeal waiver as unknowing and involuntary, we review the validity of the appeal waiver de novo. *See Wiggins*, 905 F.2d at 54; *Wessells*, 936 F.2d at 167–68; *Johnson*, 410 F.3d at 151, 153; *Thornsbury*, 670 F.3d at 537–38; *Boutcher*, 998 F.3d at 608; *Taylor-Sanders*, 998 F.3d at

11

522. On the other hand, where an appellant seeks to withdraw his guilty plea based on forfeited Rule 11 errors because he would not have entered the plea agreement but for the errors, we review for plain error. *See Martinez*, 277 F.3d at 524; *Williams*, 811 F.3d at 622; *Kemp*, 88 F.4th at 544–45.

The First Circuit has adopted a similar approach of reviewing the validity of appeal waivers de novo and declining to enforce unknowing and involuntary appeal waivers. *See United States v. Teeter*, 257 F.3d 14, 23–25 (1st Cir. 2001) ("[W]aivers, if appropriately drafted, asserted to [the defendant], and explained [to the defendant], should be honored. . . . [But the] baseline for any waiver of rights is that the defendant enter into it knowingly and voluntarily."). The First Circuit summarized how appeal waiver enforcement works in *United States v. Villodas-Rosario*:

> [A]ppellate waivers are binding so long as: (1) the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating its scope; (2) the district court ensures that the defendant freely and intelligently agreed to waive her right to appeal her forthcoming sentence" by inquiring specifically at the change-of-the-plea hearing into any waiver of appellate rights; and (3) the denial of the right to appeal would not work a miscarriage of justice.

901 F.3d 10, 15 (1st Cir. 2018) (internal quotation marks omitted) (quoting *Teeter*, 257 F.3d at 24–25).

In doing so, the First Circuit distinguished the Supreme Court's opinion in *United States v. Dominguez Benitez*: "[t]he Supreme Court's requirement that a defendant 'must show a reasonable probability that, but for the error, he would not have entered the plea,' was articulated in the context of 'a defendant who seeks reversal of his conviction after a

12

guilty plea.' . . . If imported into the realm of appellate waiver enforcement, the *Dominguez Benitez* plain error standard would be significantly more demanding than the [knowing and voluntary] standard set forth in *Teeter*." *Villodas-Rosario*, 901 F.3d at 16–17 (first quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 83 (2004); then citing *Teeter*, 257 F.3d at 24).[5]

Critically, here, Appellant does not seek to rescind his plea agreement or challenge his conviction based upon the asserted Rule 11 error. Nor does he assert that the Rule 11 error affected his decision to enter into his plea agreement. Rather, his argument centers upon the fact that the Rule 11 error resulted in an unknowing and involuntary appeal waiver. As a result, this case is distinguishable from *Dominguez Benitez*, 542 U.S. at 74.

We therefore review de novo the validity of Appellant's appeal waiver to determine whether it is knowing and voluntary.

---

[5] *Villodas-Rosario* acknowledged that another First Circuit decision, *United States v. Borrero-Acevedo*, 901 F.3d 10, 17 (1st Cir. 2018), "may have mistakenly incorporated Rule 11 standards into the [knowing and voluntary] analysis for appellate waiver enforcement" by applying "the plain-error standard articulated in *Dominguez Benitez* and [*United States v.*] *Vonn*[, 535 U.S. 55, 58–59 (2002)]" where the defendant "invoked the deficient [Rule 11] inquiry only to challenge the enforcement of his waiver." *Villodas-Rosario*, 901 F.3d at 16–17. The court did "not reconcile any inconsistency" between these approaches, because it found that the defendant's objection failed "even under the more defendant-friendly" knowing and voluntary test. *Id.* at 17. Accordingly, "debate concerning the correct analysis" is ongoing in the First Circuit. *Id.*

13

B.

Validity of Appeal Waiver

We next consider whether Appellant's appeal waiver was knowing and voluntary to determine its validity.

"When the Government invokes an appeal waiver, we enforce it 'if it is valid and if the issue being appealed falls within the scope of the waiver.'"[6] *United States v. Moran*, 70 F.4th 797, 801 (4th Cir. 2023) (quoting *Boutcher*, 998 F.3d at 608). "A waiver is valid if 'the defendant knowingly and intelligently agreed to waive the right to appeal.'" *United States v. Soloff*, 993 F.3d 240, 243 (4th Cir. 2021) (quoting *United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005)). "Whether a defendant knowingly and intelligently agreed to waive his right of appeal must be evaluated by reference to the totality of the circumstances." *United States v. Manigan*, 592 F.3d 621, 627 (4th Cir. 2010) (internal quotation marks omitted) (citation omitted).

1.

Sufficiency of the Colloquy

"Rule 11 [of the Federal Rules of Criminal Procedure] outlines the requirements for a district court plea colloquy, designed to ensure that a defendant 'understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant.'" *Kemp*, 88 F.4th at 545 (citation omitted). In line with the dictates of Rule 11, our case law

---

[6] Appellant concedes that his challenge to the procedural reasonableness of his sentence falls within the scope of the waiver.

makes clear that "a district court 'must ensure that the defendant understands the nature of the charges to which the plea is offered, any mandatory minimum penalty, the maximum possible penalty, and the various rights the defendant is relinquishing by pleading guilty.'" *Taylor-Sanders*, 88 F.4th at 522 (quoting *Williams*, 811 F.3d at 622 (citing Fed. R. Crim. P. 11(b))).  This instant case turns on Rule 11(b)(1)(N).  Rule 11(b)(1)(N) requires the district court to "address the defendant personally in open court" and "inform the defendant of, *and determine that the defendant understands* . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence."  Fed. R. Crim. P. 11(b)(1)(N) (emphasis supplied).

Appellant argues that the district court failed to review the terms of the appeal waiver with him, failed to confirm that he understood the appeal waiver, and incorrectly stated the terms of the appeal waiver by informing Appellant that he waived his right to appeal his conviction -- as opposed to his right to appeal his conviction *and sentence*. Appellant contends that these failures render Appellant's acceptance of the terms of the plea agreement's appeal waiver unknowing and involuntary.

The Government responds that the appeal waiver should be enforced based on the district court's substantial compliance with Rule 11.  The Government insists that the waiver was knowing and voluntary because the court questioned Appellant during the plea hearing regarding the appeal waiver.

"An important factor in . . . evaluat[ing whether an appeal waiver is knowing and voluntary] is whether the district court sufficiently explained the waiver to the defendant during the . . . plea colloquy." *Manigan*, 592 F.3d at 627.  But, "a district court's failure to

15

strictly abide by Rule 11 will not alone render an appellate waiver unenforceable." *Id.* A waiver is generally valid "if a district court questions a defendant regarding the waiver of appellate rights during [a properly conducted] Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver." *Taylor-Sanders*, 88 F.4th at 522 (alteration in original) (quoting *Thornsbury*, 670 F.3d at 537).

It is clear from the record that the district court here failed to properly advise and question Appellant, as required by Rule 11(b)(1)(N). The court did not explain what the appeal waiver meant or explain that exceptions existed to the waiver of Appellant's rights (i.e., ineffective assistance of counsel, prosecutorial misconduct, sentences in excess of the Guidelines range, or constitutional error). Worse still, the court misstated the terms of the appeal waiver by informing Appellant that he waived only his right to appeal his conviction -- as opposed to his right to appeal his conviction *and sentence*. Rule 11 requires the court to inform Appellant that he is "waiving the right to appeal or to collaterally attack the *sentence*." Fed. R. Crim. P. 11(b)(1)(N) (emphasis supplied). Because the court only informed Appellant that he waived his right to appeal his conviction, the court mischaracterized the terms of Appellant's appeal waiver.

Furthermore, although the severely truncated plea hearing that occurred here is insufficient to comply with Rule 11(b)(1)(N), this case reflects a much more serious error than a "failure to strictly abide" by Rule 11. *Manigan*, 592 F.3d at 627. In this case, the entirety of the district court's discussion of the appeal waiver was "[Y]ou're entering into a plea agreement in which you . . . waive your right to appeal and waive your right to contest the conviction in any post-conviction proceeding. . . . I have read and summarized

16

the plea agreement. Is that what you've agreed to?" J.A. 17–18. Appellant responded, "Yes, sir." *Id.* at 18. The court did not ask whether Appellant had reviewed the plea agreement with his counsel. Nor did the court ask any questions designed to elicit a response indicating that Appellant understood the appeal waiver. Instead, the court simply asked whether "that [was] what [Appellant] agreed to." *Id.* Consequently, the court failed to "determine" or "ensure" that Appellant understood the meaning of the appeal waiver. Fed. R. Crim. P. 11(b)(1); *Taylor-Sanders*, 88 F.4th at 522.

Therefore, the district court did not "sufficiently explain[] the waiver . . . during the . . . plea colloquy." *Manigan*, 592 F.3d at 627.

2.

Defendant's Understanding of the Appeal Waiver

The totality of the circumstances includes consideration of Appellant's understanding of the appeal waiver. To determine whether a waiver is knowing and intelligent, we also examine "the experience and conduct of the accused, as well as [his] educational background and familiarity with the terms of the plea agreement." *Thornsbury*, 670 F.3d at 537.

Appellant argues that the totality of the circumstances demonstrate that his appeal waiver was not knowing or voluntary. In support of his position, Appellant relies on his history of severe mental illness and his minimal education.

The Government counters that Appellant was aware of the appeal waiver and understood it, particularly considering he was familiar with the criminal justice system. The Government contends that Appellant's background of mental illness and drug abuse

17

did not prevent him from understanding the plea or its consequences. The Government highlights that Appellant had assistance of counsel and that both Appellant and his attorney signed the plea agreement. Therefore, the Government asserts that nothing in the record reflects that Appellant did not understand the significance of the waiver.

Much of our precedent finding appeal waivers to be knowing and voluntary is distinguishable from the case at hand. In *United States v. Soloff*, we found the appeal waiver knowing and voluntary waiver where the magistrate judge confirmed the defendant's understanding of the appeal waiver provision and fully read the plea agreement's appeal waiver provision into the record at the plea hearing. *See Soloff*, 993 F.3d at 242. In *United States v. Blick*, we determined that the appeal waiver was knowing and voluntary where the defendant had a college education and the district court "specifically questioned" the defendant about whether he understood the appeal waiver. *Blick*, 408 F.3d at 169. In *United States v. McGrath*, we likewise concluded that the appeal waiver was knowing and voluntary after finding that the defendant understood the meaning and consequences of the waiver. *See* 981 F.3d 248, 250 n.1 (4th Cir. 2020). This was true particularly because the defendant "acknowledged he had reviewed the plea agreement with his counsel, understood its terms, and had sufficient time to consult with his counsel before signing it[,] . . . [t]he court drew [the defendant's] attention to the plea agreement's appeal waiver provision," and the court "explained [the waiver's] terms, including the stipulated combined offense level of 43, and that the Guidelines recommended a sentence of life imprisonment, before making a specific finding that the defendant understood that

18

'[i]f [the court] sentence[s] him at or below the offense level 43, he has no right to appeal.'" *Id.* None of these circumstances exist in this case.

Appellant acknowledged at the plea hearing that he had met with his counsel prior to the hearing, but the court did not ask whether Appellant had an opportunity to discuss the plea agreement with his counsel. Even if Appellant had reviewed the plea agreement with counsel during that meeting, that would not be enough to cure the possible confusion caused by the district court here. We cannot say that Appellant's history of severe mental illness and his minimal education would alone be a sufficient basis to conclude that Appellant's appeal waiver was unknowing and involuntary. Nevertheless, this history coupled with the district court's failure to inform Appellant of the terms of the appeal waiver, mischaracterization of the plea agreement's material terms, and failure to ensure that Appellant understood the meaning of the appeal waiver, is sufficient for us to hold that the appeal waiver here was not knowingly and voluntarily made.

3.

Severance of Appeal Waiver

This is not the first time we have invalidated an appeal waiver on the basis that it was not knowing and voluntary. In *United States v. Wessells*, we proceeded to the merits of an appeal -- despite an appeal waiver -- based on our finding that Appellant "did not knowingly agree to an absolute waiver of all rights to appeal his sentencing." *Wessells*, 936 F.2d at 168. In *Wessells*, we established that the remedy for an unknowing and involuntary appeal waiver is to sever the waiver provision from the plea agreement. *Id.*

19

Subsequently, the Eleventh Circuit, interpreting *Wessells*, distinguished "the concerns posed by an involuntary and unknowing *guilty plea* from those raise[d] by an involuntary and unknowing sentence *appeal waiver*." *United States v. Bushert*, 997 F.2d 1343, 1353–54 (11th Cir. 1993) (emphasis supplied) (citing *Wessells*, 936 F.2d at 168). The Eleventh Circuit ultimately held that, for an appeal waiver, as opposed to an attempt to invalidate an entire guilty plea, "severance is both practical and adequate to preserve the defendant's rights." *Id.* Likewise, the First Circuit relied on *United States v. Bushert* to establish severance as the proper remedy where a district court fails, during the Rule 11 colloquy, to sufficiently inform the defendant of the appeal waiver and assure that the defendant understands it. *See Teeter*, 257 F.3d at 27 (finding the appeal waiver unknowing and involuntary and proceeding to merits of the appeal by severing "the waiver of appellate rights from the remainder of the plea agreement [while] allowing the other provisions to remain in force") (citing *id.*)).

More recently, in *United States v. Manigan*, we declined to enforce an appeal waiver after finding it unknowing and involuntary because the district court did not mention the waiver provision and "contrary to the plea agreement . . . advised Manigan that he *would* be able to appeal his sentence." *Manigan*, 592 F.3d at 628 (emphasis in original). And, notably, two of our recent, albeit unpublished, opinions further support severing the appeal waiver from the plea agreement and declining to enforce the appeal waiver. *See United States v. Bailey*, No. 22-4524, 2023 WL 3578819, at *2 (4th Cir. May 22, 2023) (proceeding to the merits of the appeal after declining to enforce the appeal waiver as knowing and voluntary based on the district court's "prejudicial" "failure to [properly]

20

advise [the defendant] of the appellate waiver"); *United States v. Abney*, No. 22-4155, 2023 WL 5608081, at *2 (4th Cir. Aug. 30, 2023) (proceeding to the merits of the appeal after declining to enforce the appeal waiver as knowing and voluntary because the district court "did not correctly state the details of th[e] waiver[,] . . . never asked [the defendant] to confirm that he understood the waiver," and the record reflected that the defendant "either did not hear or did not understand the court's mention of the waiver").

Today, we make clear that the proper remedy for an invalid appeal waiver is to sever the appeal waiver from the remainder of the plea agreement and relieve the defendant of the waiver. *See Wiggins*, 905 F.2d at 54; *Wessels*, 936 F.2d at 167; *Manigan*, 592 F.3d at 628. *See also Bushert*, 997 F.2d 1353–44; *Teeter*, 257 F.3d at 24–25; *Villodas-Rosario*, 901 F.3d at 15–16.

## 4.

## Alleged Prejudice to the Government

The Government asserts that if the appeal waiver is invalidated, it has not received the benefit of the bargain of the plea agreement because it "would not have agreed to the other terms of the plea agreement without [Appellant's] acceptance of an appellate waiver." Gov't's Supp. Resp. Br. at 16. However, because we invalidate the appeal waiver as not knowing and voluntary, we need not consider the Government's alleged prejudice.

Therefore, we sever the appeal waiver from the remainder of the plea agreement, and we deny the Government's motion to dismiss the appeal.

21

C.

Miscarriage of Justice

Even if this appeal waiver were valid, however, we would still refuse to enforce it. Namely, because this district court's practice of omitting necessary information in both plea and sentencing hearings, disregarding proper procedure, and relying on appeal waivers to shield procedurally unreasonable sentences from review constitutes a miscarriage of justice warranting our consideration of the merits of the appeal, regardless of the validity of the appeal waiver.

"We have refused to enforce valid appeal waivers for a 'narrow class of claims.'" *Blick*, 408 F.3d at 171 (quoting *United States v. Lemaster*, 403 F.3d 216, 220 n.2 (4th Cir. 2005)). *See Moran*, 70 F.4th at 802 n.3 (collecting cases). Relevant here, "[w]e will refuse to enforce an otherwise valid [appeal] waiver if to do so would result in a miscarriage of justice." *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016) (citing *Johnson*, 410 F.3d at 151); *see also Thornsbury*, 670 F.3d at 539 n.7 (citing *United States v. Polly*, 630 F.3d 991, 1001 (10th Cir. 2011); *Teeter*, 257 F.3d at 25 n.9, n.10).

This narrow class of claims includes sentences "imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race," *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992), sentences imposed while a defendant was deprived of counsel during his sentencing proceedings, *United States v. Attar*, 38 F.3d 727, 732–33 (4th Cir. 1994), sentences imposed beyond the authority of the district court, *see United States v. Broughton-Jones*, 71 F.3d 1143, 1146–47 (4th Cir. 1995) (referring to the sentence as an "illegal" one), and cases in which an appellant makes a

22

"proper showing of actual innocence," *Adams*, 814 F.3d at 182; *United States v. McKinney*, 60 F.4th 188, 192–93 (4th Cir. 2023).

In *Taylor-Sanders*, we stated "while a district court's failure to consider a nonfrivolous argument at sentencing might mean that a sentence is imposed in violation of law, that is a legal error, the appeal of which can be barred by an appeal waiver." *Taylor-Sanders*, 88 F.3d at 524 (citing *McGrath*, 981 F.3d at 250).  Therefore, we declined to establish that cases "merely . . . touched by a legal error" are sufficient to warrant our application of the miscarriage of justice exception.  *Id.* (internal quotation marks omitted) (citation omitted).  And correctly so.  "Were we to hold otherwise, it is difficult to conceive of a limiting principle that would prevent the . . . exception from swallowing the rule that appellate waivers are normally given effect, since nearly every appeal of a sentence involves a claim of legal error." *Thornsbury*, 670 F.3d at 539.  Although we are conscious of the need to maintain the narrowness of the miscarriage of justice exception, this appeal from this particular district court presents far more egregious conduct than a case merely touched by legal error.  We stress that the exception would not apply in any less egregious a situation.

The regular practice of the district court below to omit necessary information and disregard required procedure in both plea and sentencing hearings, knowing that it is generally shielded by an appeal waiver, cannot stand.  This district court, at best, minimally complies with Rule 11 while failing to accomplish the goals of a Rule 11 hearing, but more often, entirely fails to comply, as we have noted it has done in the past.  *See Kemp*, 88 F.4th at 545 (chastising the court for its "less than perfectly clear" discussion of the appeal waiver

23

and noting that "the court first suggest[ed] that [the defendant] had not waived any appellate rights and then inform[ed] [the defendant] that he had reserved his right to appeal "from the sentencing excessive guideline."). *See also United States v. Lyons*, No. 23-4367, 2024 WL 4501084, at *1 (4th Cir. Oct. 16, 2024) (noting Rule 11 omission); *United States v. Paige*, No. 23-4296, 2024 WL 3384836, at *1 (4th Cir. July 12, 2024) (noting "several omissions during the district court's . . . plea colloquy"); *United States v. Page*, No. 23-4293, 2024 WL 2355395, at *1 (4th Cir. May 23, 2024) (noting the Rule 11 omissions); *United States v. Davila*, No. 20-4338, 2023 WL 3597567, at *1,*3 (4th Cir. May 23, 2023) ("We would be remiss not to note . . . the lack of compliance with Rule 11" and the "dozen errors or omissions" "[a]t the Rule 11 hearing."); *Bailey*, 2023 WL 3578819, at *1–2 ("[T]he district court's Rule 11 colloquy had several omissions[.] . . . Rather than fully review the terms of the appellate waiver with [the defendant], the district court informed [the defendant] that he was pleading guilty and, as part of that process, 'waive[d his] right to appeal.' . . . This was the only mention of the appellate waiver during the plea hearing and the court did not ask whether [the defendant] understood the significance of the waiver."); *Abney*, 2023 WL 5608081, at *2 (noting, among other omissions, that the court "did not correctly state the details of [appellant's appeal] waiver"); *United States v. Mills*, No. 21-4490, 2022 WL 2764416, at *1 (4th Cir. July 15, 2022) (stating "the district court did not fully comply with Rule 11"); *United States v. Menocal-Ruiz*, 858 F. App'x 71, 72 (4th Cir. 2021) (noting the court's "Rule 11 errors").

This district court has also repeatedly and, with increasing frequency, disregarded our precedent regarding procedurally reasonable sentencing hearings. *See United States v.*

24

*Webb*, 965 F.3d 262, 268 (4th Cir. 2020) (noting that the court "entirely failed to address several non-frivolous arguments for a lower sentence"); *United States v. Provance*, 944 F.3d 213, 219 (4th Cir. 2019) ("[W]e cannot find any rational explanation for this sentence. The district court failed to explain how the § 3553(a) factors support the sentence. It failed to explain why it rejected the Government's nonfrivolous arguments in favor of a Guidelines sentence. And, in fact, it failed to provide any sentencing rationale at all[.]"); *United States v. Lymas*, 781 F.3d 106, 113–14 (4th Cir. 2015) (concluding that the court "fail[ed] to explain its rejection of the Guidelines [and] failed to sufficiently explain the sentences imposed" and noting the district court's "wholesale rejection of the Guidelines" and its "cookie-cutter approach that is the antithesis of our individualized sentencing process"); *United States v. Carter*, 564 F.3d 325, 328–29 (4th Cir. 2009) (concluding that the court's "variety of statements respecting the below- Guidelines sentence" was not a sufficient "individualized rationale" or "explanation" for the sentence). *See also United States v. Hutchinson*, No. 23-4282, 2024 WL 4750503, at *2 (4th Cir. Nov. 12, 2024) (After hearing the parties' arguments, "[t]he district court, without explanation, imposed [the] sentence."); *United States v. Gatford*, No. 22-4482, 2024 WL 379958, at *3 (4th Cir. Feb. 1, 2024) ("Our review of the sentencing transcript demonstrates that the district court did not address [appellant's] arguments and provided no explanation for the sentence imposed . . . ."); *United States v. Grady*, No. 22-6693, 2023 WL 4742960, at *2 (4th Cir. July 25, 2023) (reasoning that "the district court did not acknowledge or address [appellant's] . . . arguments"); *United States v. Coston*, No. 21-4706, 2023 WL 4575926, at *2 (4th Cir. July 18, 2023) ("[T]he district court provided scant explanation for the

sentence it imposed. . . . The district court's statements throughout the hearing are otherwise devoid of any analysis of the § 3553(a) factors or consideration of [appellant's] remaining mitigation arguments. . . . The district court's failure to provide any meaningful indication of the sentencing factors it considered, or the weight it afforded those factors and [appellant's] arguments, renders its explanation insufficient."); *United States v. Walker*, No. 21-4343, 2023 WL 4363655, at *4 (4th Cir. July 6, 2023) (noting that the court "failed . . . to respond to any of [appellant's] nonfrivolous mitigation arguments [and failed] to provide any explanation whatsoever for its sentence"); *United States v. McNeill*, No. 21-4581, 2023 WL 3533605, at *2 (4th Cir. May 18, 2023) ("From this record, we cannot discern why the district court opted for [its chosen] sentence . . . . Nor can we find, based on the court's terse sentencing explanation, that the court conducted an individualized assessment of [appellant] or applied the § 3553(a) factors specifically to him."); *United States v. Roberson*, No. 21-4128, 2023 WL 2064581, at *3 (4th Cir. Feb. 17, 2023) (noting that in the initial appeal, we remanded because "the district court failed to provide an explanation for its chosen sentence"; yet, "the district court again failed to provide an explanation on remand"); *United States v. Hernandez-Aldama*, No. 19-4763, 2022 WL 1114370, at *4 (4th Cir. Apr. 14, 2022), *cert. denied*, 143 S. Ct. 239, 214 L. Ed. 2d 97 (2022) (concluding that "the district court entirely failed to explain its reasoning" and failed to consider appellant's arguments in mitigation); *United States v. Suggs*, No. 20-4032, 2022 WL 313845, at *3 n.2 (4th Cir. Feb. 2, 2022) (noting that "this is not the first time we've addressed this district court's truncated sentencing practices" and urging the court to "do more than the bare minimum"); and *United States v. Myles*, 805 Fed. App'x

26

184, 189 (4th Cir. 2020) (determining that "the district court's failure to say anything about its chosen sentence was a clear and obvious error").

Unfortunately, we have reversed the court below with increasing frequency to no avail. Heretofore, the district court's omissions, failures, and disregard for our precedent have been effectively shielded from review by appeal waivers in cases such as the one at hand. No more. "[A] defendant who executes a general waiver of the right to appeal does not subject himself to being sentenced entirely at the whim of the district court." *United States v. Singletary*, 75 F.4th 416, 422 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 519 (2023) (internal quotation marks omitted) (citations omitted).

We hold that this particular district court's practice of frequent and repeated disregard for a defendant's right to necessary information during plea colloquies and indifference to proper procedure during sentencing hearings -- which stems from the court's knowledge that its conduct would be effectively shielded by an appeal waiver -- is a miscarriage of justice that cannot remain unaddressed.

D.

Procedural Error

Given that the appeal waiver here is invalidated, both because it was  not knowing and voluntary and because enforcing it would result in a miscarriage of justice, we turn to the merits of Appellant's sentencing argument on appeal. Appellant argues that the district court procedurally erred because it failed to explain its sentence or consider any of Appellant's potentially meritorious arguments for a below Guidelines sentence.

27

A sentence is procedurally unreasonable if a district court commits an error "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence— including an explanation for any deviation from the Guidelines range." *United States v. Reed*, 58 F.4th 816, 820 (4th Cir. 2023) (quoting *United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020)).

"[O]ur review of a district court's sentencing explanation is 'not limited to the court's statements at the moment it imposes sentence,' but extends to the 'full context, including the give-and-take of a sentencing hearing.'" *United States v. Webb*, 965 F.3d 262, 271 (4th Cir. 2020) (quoting *United States v. Nance*, 957 F.3d 204, 213 (4th Cir. 2020)). The requirement that a district court "adequately explain the chosen sentence[,] including an explanation for any deviation from the Guidelines range . . . is meant to allow for meaningful appellate review of the sentencing determination." *Fowler*, 948 F.3d at 668. The court's explanation must satisfy us that it "has considered the parties' arguments and has a reasoned basis for exercising its own legal decision-making authority in light of § 3553(a)." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010) (internal quotation marks omitted) (citation omitted).

Appellant argues that procedural reasonableness demands more of district courts than "boilerplate recitation[s]" that "could be cut and pasted into the sentencing transcript of any federal defendant in the country." Appellant's Opening Br. at 16. Appellant also argues that the court prioritized efficiency over proper procedure when it failed to provide

an individualized response to Appellant's arguments in favor of mitigation. Therefore, Appellant contends that the court's complete failure to acknowledge the arguments was procedurally unreasonable.

Significantly, the Government agrees. The Government readily concedes that the sentence was procedurally unreasonable. *See* Gov't's Supp. Resp. Br. at 25 ("Defendant challenges the procedural reasonableness of his sentence on the ground that the district court failed to provide a sufficiently individualized explanation that responded to his non-frivolous mitigating arguments. The government agrees that the sentence is marred by reversible procedural error."); Oral Argument at 29:32–29:35, *United States v. Smith*, No. 22-4338 (4th Cir. Dec. 11, 2024), https://www.ca4.uscourts.gov/OAarchive/mp3/22-4338-20241211.mp3 ("Oral Argument") (Q: "You agree that the sentence that occurred after this plea was procedurally unreasonable, correct?" A: "Correct."). Nonetheless, the Government opines that, on remand, it should be given the opportunity to invalidate the entire agreement. Because we invalidate only the appeal waiver of the plea agreement by severing it, we decline to invalidate the entire agreement.

Here, the sentencing "discussion" by the district court was scant. The court simply stated, "[t]he Court has considered that range as well as other relevant factors set forth in the advisory sentencing Guidelines and those set forth in 18 [U.S.C. §] 3553(a)." J.A. 39–40. The court did not provide any individualized analysis because it did not apply the § 3553(a) factors to Appellant's circumstances, entirely ignored Appellant's arguments, and provided no explanation or basis whatsoever for its sentence. Therefore, the court's explanation was inadequate because it does not reflect that the court "considered the

29

parties' arguments and ha[d] a reasoned basis for exercising its own legal decision-making authority in light of § 3553(a)." *Mendoza-Mendoza*, 597 F.3d at 216.

In this case, without explanation, the district judge decided 12 years of Appellant's life in 13 minutes. The Government rightfully acknowledges that this was procedurally unreasonable. Because it was.

Finally, in light of the district court's disregard for procedure and our precedent, we conclude that this case should be reassigned to a different judge on remand to preserve the appearance of integrity. After all, "[w]e must seek to avoid both actual bias and the mere appearance of bias." *United States v. McCall*, 934 F.3d 380, 384 (2019). *See e.g., id.* (quoting *United States v. Neal*, 101 F.3d 993, 1000 n.5 (4th Cir. 1996)) ("When we remand a case, we may reassign it to a different judge when 'the appearance of fairness and impartiality is best advanced by reassignment.'"); *United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010) (citing *United States v. Guglielmi*, 929 F.2d 1001, 1007 (4th Cir. 1991)) (explaining that, even absent a claim of bias, reassignment is appropriate in "unusual circumstances where both for the judge's sake and the appearance of justice an assignment to a different judge is salutary and in the public interest, especially as it minimizes even a suspicion of partiality"); *United States v. Chang*, 121 F.4th 1044, 1052 (4th Cir. 2024) (Thacker, J., concurring) ("[E]ven absent a finding of presumptive bias, . . . reassignment to a different judge on remand would preserve the appearance of judicial integrity.").

30

IV.

For the foregoing reasons, we sever the appeal waiver from Appellant's plea agreement and deny the Government's motion to dismiss.  And we conclude the sentence here is procedurally unreasonable.  Thus, we vacate the judgment of the district court and remand to a different district court judge for re-sentencing.

*VACATED AND REMANDED*